# J. F. NELSON v. INTERNATIONAL HARVESTER COMPANY OF AMERICA.[1]

April 26, 1912.

Nos. 17,475—(53).

**Malicious prosecution — verdict sustained by evidence.**

> In an action for the malicious prosecution of a civil action, it is *held* that the questions of want of probable cause, malice, and whether the civil action was commenced in good faith, acting upon the advice of counsel, after a full and fair statement of the facts, were properly submitted to the jury, and that the evidence sustains the verdict.

Action in the district court for Clay county to recover $1,000 for malicious prosecution. The answer admitted that on or about January 31, 1910, defendant commenced an action in justice court in the city of Moorhead, but denied that the action was instituted maliciously; admitted the affidavit of garnishment therein and that $97.81 was seized and held under garnishment, but denied that the same was done maliciously or to vex, harass and injure plaintiff; admitted that on the trial of May 9, 1910, in district court a verdict was returned in favor of the defendant in that action, and the seizure on May 15, 1910, by garnishment of $192.18, but denied that the action was taken maliciously, and alleged that defendant's action was taken upon advice of counsel after a full and fair statement of facts. The case was tried before Nye, J., and a jury which returned a verdict in favor of plaintiff for $1,000. From an order denying defendant's motion for judgment notwithstanding the verdict and denying its motion for a new trial, unless plaintiff would consent to a reduction of the verdict to $750, it appealed. Affirmed.

[1] Reported in 135 N. W. 808.

[Note]    When malice may be inferred in action for malicious prosecution, see note in 9 L.R.A. (N.S.) 1087.

Advice of counsel as defense to action for malicious prosecution, see note in 18 L.R.A. (N.S.) 49.

*Ball, Watson, Young & Lawrence* and *E. E. Sharp,* for appellant.
*William Russell, William R. Tillotson* and *F. H. Peterson,* for
respondent.

BROWN, J.

Action for damages for the alleged malicious prosecution of a civil
action. Plaintiff had a verdict, and defendant appealed from an
order denying its alternative motion for judgment or a new trial.

It appears from the record that on July 9, 1903, defendant con-
ditionally sold and delivered to plaintiff, at an agency and place
of business maintained by it at Beaver Lake, Canada, near which
place plaintiff was then engaged in farming, a mowing machine and
hay rake, the purchase price of which was $110. Plaintiff at the
time paid $35 in cash, and for the balance executed and delivered
to defendant his note or contract for the sum of $75, due and pay-
able November 1, 1904. This note or contract described the prop-
erty, and expressly provided that the title thereto should be and re-
main in defendant until the note was paid in full. In December,
1903, or January, 1904, plaintiff paid the agent of defendant who
made the sale of the machine $20 upon the note, and at the same
time delivered to him a quantity of hay, to be by the agent sold and
the proceeds applied upon the note. In July, 1904, plaintiff gave
up his farming operations in Canada, and returned the machinery
to defendant's said agent, who accepted the same in full settlement
and discharge of the note. Plaintiff then removed to this state, and
subsequently entered the service of the Northern Pacific Railroad
Company as a conductor on one of its trains running between James-
town, North Dakota, and Dilworth, this state. Defendant, claiming
that the note had not been paid, made diligent effort during the years
1907 and 1908 to locate plaintiff, and in 1909 learned of his then
residence and occupation. The company demanded payment of an
alleged balance due upon the note, and plaintiff promptly refused
further payment, upon the ground that he had settled and paid the
note in full to the agent of the company at its offices and place of
business where the original purchase was made. He informed de-

fendant's agents at Fargo, North Dakota, where the note had been sent for collection, the manner in which he claimed to have fully discharged the note, namely, by the payment of $20 in cash, the delivery of hay of the value of $24, and the return of the machinery to defendant's agent in Canada, under the agreement and understanding that the return of the machinery should be taken and accepted in full of any balance due.

It appears without dispute that defendant's agent who made the sale accepted the machinery, and subsequently resold the same, or a part thereof, reporting the fact to the company. The agent of the company at Fargo gave no force or effect to this matter, and informed plaintiff that the payment in hay or other commodity was not binding upon the company, and that unless he paid the balance claimed to be due suit would be brought against him to recover the amount, and the wages due him from the railroad company attached and tied up by garnishment proceedings. Plaintiff still insisted that the note had been paid, but finally, "to purchase peace" and prevent the garnishment of his wages, he agreed to pay the sum of $25, at the rate of $5 per month. The company agreed to accept this, but plaintiff later repudiated the offer and returned to his original position that the note had been paid.

Thereafter defendant brought suit against plaintiff before a justice of the peace of Clay county, this state, to recover upon the note, at the same time causing garnishment proceedings to be instituted, by which the wages due plaintiff from the railroad company were attached to the amount of $97.81. The justice rendered judgment for the company for the full amount demanded, something over $40, and plaintiff appealed to the district court, where, after trial before a jury, a verdict was rendered for plaintiff, finding that the note had been fully paid. The verdict was so returned on May 9, 1910. On May 19, 1910, at the suggestion of one of the agents of defendant at its Fargo office, a second garnishment was sued out in the district court against plaintiff, by which the further sum of $192.18 was attached and tied up. The purpose of this was, as expressed by one of defendant's witnesses, "to tie up sufficient funds to cover

costs in case of an appeal to the Supreme Court." Thereafter, on June 13, 1910, defendant moved for a new trial of the action, which was denied on the 27th of the same month. On July 22, 1910, defendant appealed from that order to the Supreme Court, but voluntarily dismissed the same on August 8, 1910. The district court dismissed the second garnishment above mentioned on June 2, 1910, on plaintiff's motion, upon the ground that it was "unwarranted, vexatious, and unjust."

Subsequent to the dismissal of the appeal from the order denying a new trial, plaintiff brought this action, charging in his complaint that the action upon the note and the garnishment proceedings were commenced maliciously and without probable cause, and with intent to vex, harass, and annoy plaintiff and the railroad company, and to cause the latter to discharge plaintiff from its employ. Plaintiff had verdict for $1,000, which the trial court reduced to $750. Defendant appealed.

The assignments of error in this court present two questions, and counsel for defendant contend: (1) That the evidence wholly fails to show want of probable cause for the commencement of the action upon the note; and (2) that it conclusively appears from the evidence that the action was brought against plaintiff upon the advice of counsel, after a full and fair disclosure of all material facts. We are unable, on the record before us, to sustain either contention.

1. Probable cause for the commencement of a civil action consists in "such facts and circumstances as will warrant a cautious, reasonable, and prudent man in the honest belief that his action and the means taken in prosecution of it are just, legal, and proper." 26 Cyc. 43; Burton v. St. Paul, Minneapolis & Manitoba Ry. Co. 33 Minn. 189, 22 N. W. 300. The burden of proof is on the plaintiff, and the fact of want of probable cause must be established by him by a fair preponderance of evidence.

In the case at bar defendant recovered a judgment in the justice court, and, had the action ended in that court, want of probable cause would have been conclusively negatived, for there is no claim that the judgment was procured by fraud. There was an appeal,

however, to the district court, where plaintiff had a verdict on the merits of the case, and this, with the subsequent voluntary abandonment of that action by the dismissal of the appeal from the order denying a new trial, sufficiently rebutted any inference or presumption arising from the justice court judgment. Skeffington v. Eylward, 97 Minn. 244, 105 N. W. 638, 114 Am. St. 711.

It has been held that the final determination of a civil action in defendant's favor constitutes prima facie want of probable cause, shifting the burden of proof on that issue upon defendant. Wetmore v. Mellinger, 64 Iowa, 741, 14 N. W. 722, 18 N. W. 870. But plaintiff did not rest upon proof of the final determination of the action in his favor, but went further, and offered evidence which, if true, conclusively established the fact that defendant had no cause of action against him. The truth of the matters disclosed by plaintiff was within the knowledge of defendant, or with reasonable diligence could have been ascertained, and it was incumbent upon it either to deny or explain the same. There was no attempt to do this. And we hold that the question was properly submitted to the jury.

It appears, in addition to the final determination of the justice court action in plaintiff's favor, that the basis of defendant's cause of action was the promissory note already referred to. The note contained a clause to the effect that the title to the property should remain in defendant until the indebtedness was paid in full. The note was for $75. Plaintiff's evidence tends to show that he paid upon the note $20 in cash, and delivered to defendant's agent hay of the value of $24, to be applied as payment; that thereafter he returned the machinery to defendant's agent, of whom the original purchase was made, under the agreement and understanding that the balance due upon the note should be canceled and the debt discharged. It also appears that the agent accepted the return upon that agreement. He subsequently sold a part of the machinery, and reported the fact to the company, and the amount received was indorsed as a payment upon the note. When called upon to pay the alleged balance due by the Fargo office of defendant, the agents in

charge thereof were informed of these facts, and if they doubted plaintiff the facts could readily have been learned.

There was no evidence offered in contradiction of plaintiff's claim upon this subject, nor any evidence negativing the authority of the agent to accept a return of the machinery on the terms stated. Though the agency was located in a foreign country, northwest Canada, it was presumably within the call of defendant at all times. Yet the agent was not called upon either to deny or explain the transaction. Nor did defendant present any claim under the further provision of the sale contract granting it, in certain contingencies, the right to retake the property and sell and dispose of the same at public or private sale, without prejudice to its right to demand payment of any balance due on the note. There was no claim that defendant or its agent proceeded under that part of the contract, and it remains undisputed that the property was returned and accepted in discharge of the contract.

From these facts we have no difficulty in reaching the conclusion that the jury was fully justified in finding want of probable cause for the action against plaintiff. It is a thoroughly settled law in this and other states, where personal property is sold upon the condition and reservation that title thereto shall not pass from the seller until the purchase price is paid in full, that the seller, upon the default of the purchaser to make payment as required by the contract, has the election of one of three remedies: (1) He may reclaim the property; (2) he may treat the sale as absolute and sue to recover the debt; or (3) bring an action to foreclose his lien; but the assertion of either right is the abandonment of the other. Keystone Mnfg. Co. v. Cassellius, 74 Minn. 115, 76 N. W. 1028; 35 Cyc. 696, and authorities there cited. When the property is retaken by the seller the contract is at an end, and no further rights thereunder exist against the purchaser. It operates as a rescission of the executory agreement to sell. In this respect it can make no difference, from the standpoint of law, whether the seller reclaim the property as a matter of right and in virtue of the authority conferred by the contract, or by the voluntary return by the purchaser and acceptance

by the vendor under agreement to discharge the debt. In either case the contract relations between the parties, as respects the particular contract, came to an end.

In this conclusion we give no force or effect to the alleged delivery of hay as a payment. Nor does the fact that there existed for some time prior to the commencement of the action complained of a controversy between plaintiff and defendant's Fargo agents, respecting the liability of plaintiff, and that plaintiff offered to compromise the same by the payment of $25, in any proper view change the situation. Plaintiff at all times denied his further liability, and his offer of payment was, as he expressed it, to avoid the garnishment of his wages which defendant had threatened. This offer of compromise, for the purpose stated, was not sufficient basis for an honest belief that defendant had a cause of action against plaintiff.

2. Want of probable cause having been shown, the presumption of malice arose, and it was not necessary that actual malice be shown. We cannot escape the conclusion, however, that the jury was justified in finding actual malice. The repeated garnishments issued against plaintiff, particularly the second, after a verdict had been returned against defendant in its action upon the note, were clearly unwarranted and unjust, and bear earmarks other than a good-faith effort to collect a supposedly honest debt. Tykeson v. Bowman, 60 Minn. 108, 61 N. W. 909.

3. We are also of opinion, and so hold, that the question whether defendant was protected from liability by the advice of counsel was properly submitted to the jury. There is no conflict in the authorities upon the general proposition that advice of counsel is a complete defense to an action for the malicious prosecution of either a civil action or a criminal charge, when it is made to appear that the prosecutor fully and fairly stated all the facts within his knowledge, or which by reasonable diligence he might have learned, to a reputable attorney, and that in bringing the action or instituting the criminal prosecution he honestly and in good faith relied and acted upon the advice given him. Nor is it material whether the advice be sound or unsound in point of law. The protection springs from the ad-

vice, founded upon a full statement of facts, and good-faith reliance thereon. Shea v. Cloquet Lumber Co. 92 Minn. 348, 100 N. W. 111, 1 Am. & Eng. Ann. Cas. 930, and authorities there cited in the note. Where the evidence is undisputed, and it clearly appears that all the facts were fully submitted to the attorney, as well as the good-faith reliance upon his advice, the question resolves itself into one of law for the court. Mundal v. Minneapolis & St. Louis Ry. Co. 92 Minn. 26, 99 N. W. 273, 100 N. W. 363; Moore v. Northern Pacific Ry. Co. 37 Minn. 147, 33 N. W. 334; Gilbertson v. Fuller, 40 Minn. 413, 42 N. W. 203.

But, where the facts are in dispute, the question goes to the jury. In the case at bar the court submitted the question to the jury. In this we conclude there was no error. It does not in our opinion conclusively appear from the record that all the facts within the knowledge of defendant, or which by reasonable diligence it could have learned, were fully or fairly stated to the attorneys whose opinion defendant claims to have relied upon. It is extremely doubtful whether the attention of the attorneys was called to the undisputed fact that the company had accepted a return of the machinery under the agreement to discharge the debt, or that a part of the machinery had been sold and the proceeds appropriated by the company.

While it does appear that Exhibit 1, containing numerous letters, memorandums, and documents relating to this note, was handed to the attorneys for examination, all the facts stated were not there disclosed, and, besides, it does not appear that anything more than a very cursory examination thereof was made, or that the real situation was impressed upon the attorneys by an oral communication on the part of defendant's officers and agents having knowledge of the essential facts. The agent who accepted a return of the machinery was not called upon for his version of the transaction, and the record leaves the impression that the attorneys were governed very largely, in giving their opinion that defendant had a cause of action against plaintiff, by the fact that a payment upon the note was claimed to have been made in hay. And if they had in mind the fact that the machinery had been returned to and accepted by

117 M.—20.

defendant, they were unaware of the further fact that the acceptance was upon the agreement to discharge the debt. We say, therefore, that it is doubtful whether the facts were fully and fairly stated to counsel, and the question was one of fact.

It is also uncertain whether reliance upon the advice of counsel was in good faith. Defendant knew of the return of the machinery, that a part thereof had at the time been resold, and it was bound to know as a matter of law that under the agreement for the return its contract with plaintiff was brought to an end, and that it had no further claim against him for the purchase price of the property. Yet with all this knowledge the action was commenced, and supplemented with vexatious garnishment proceedings.

Order affirmed.