**Lawrence LEIENDECKER, et al., Respondents,**

v.

**ASIAN WOMEN UNITED OF MINNESOTA, et al., Appellants,**

**Greenstein, Mabley & Wall, LLC, et al., Appellants.**

**A16-0360**

Supreme Court of Minnesota.

Filed: May 24, 2017

Eric J. Magnuson, Robins Kaplan LLP, Minneapolis, Minnesota; Mahesha P. Subbaraman, Subbaraman PLLC, Minneapolis, Minnesota; Robert A. Hill, Robert Hill Law, Ltd., Maplewood, Minnesota; and Thomas B. Gunther, Gunther Law Offices, LLC, Minneapolis, Minnesota, for respondents.

Kay Nord Hunt, Phillip A. Cole, Bryan R. Feldhaus, Lommen Abdo, P.A., Minneapolis, Minnesota, for appellants Asian Women United of Minnesota, et al.

Thomas P. Kane, Armeen F. Mistry, Cozen O'Connor, Minneapolis, Minnesota, for appellants Greenstein, Mabley & Wall, LLC, et al.

## OPINION

McKEIG, Justice.

Sinuon and Lawrence Leiendecker sued the nonprofit organization Asian Women United of Minnesota (AWUM), alleging that two of AWUM's previous lawsuits against them constituted malicious prosecution. AWUM sought immunity under Minnesota's anti-SLAPP (Strategic Lawsuit Against Public Participation) law, which permits parties to move for dismissal of a lawsuit on the ground that a claim against them relates to an act involving public participation. Minn. Stat. §§ 554.01-.06 (2016). After we clarified the law's procedure, the district court ruled that the section of the law that governs motions "to dispose of a judicial claim," Minn. Stat. § 554.02, subdivision 1, violated the Leiendeckers' right to a jury trial by requiring the trial judge to find facts. *Id.*, subd. 2(3) (requiring "the court" to make findings). AWUM appealed to the court of appeals, then petitioned this court for accelerated review, which we granted. For the reasons that follow, we affirm.

Our previous case involving these parties chronicled the history of this litigation.

The parties in this case have a long-running feud that has resulted in multiple lawsuits. AWUM is a nonprofit organization that operates a shelter for battered women and provides other services for women and children. Sinuon Leiendecker was AWUM's executive director from 1999 to 2004. Lawrence Leiendecker is an attorney who provided pro bono legal services to AWUM.

The relationship between AWUM and the Leiendeckers began to deteriorate in 2003. In late 2003, the Leiendeckers attempted to oust AWUM's board of directors by forming a new board, terminating the old board, and filing a declaratory-judgment action to have the new board declared legitimate. In response, AWUM's old board alleged that it had previously fired Sinuon from her position as AWUM's executive director and that she had received wages and benefits to which she was not entitled.

In that lawsuit—the first between the parties—the district court rejected the Leiendeckers' efforts to install the new board of directors. The district court also rejected the old board's allegation that it had fired Sinuon, but permitted the old board to proceed on its claims that Sinuon had received wages and benefits to which she was not entitled. The old board then fired Sinuon and sought, unsuccessfully, to add a legal-malpractice claim against Lawrence to the action. After AWUM declined to tender advance indemnification to Sinuon, the district court dismissed the case and awarded approximately $25,000 to Sinuon as reimbursement of her costs and attorney fees.

In the parties' second lawsuit, Sinuon sued AWUM in August 2005 for, among other things, wrongful termination. The district court dismissed the action, but the court of appeals reversed. *Leiendecker v. Asian Women United of Minn.*, 731 N.W.2d 836, 838 (Minn. App. 2007). The parties settled the second lawsuit in 2008.

In the parties' third lawsuit, AWUM sued Lawrence in February 2007 for legal malpractice and related claims. Lawrence counterclaimed for indemnification. The district court eventually dismissed AWUM's complaint at AWUM's request, granted summary judgment to Lawrence on his counterclaim for indemnification, and entered judgment for over $41,000 in favor of Lawrence.

In the parties' fourth lawsuit, AWUM sued Sinuon in February 2008 for conversion and related claims, alleging that Sinuon had received wages and other payments to which she was not entitled while she was AWUM's executive director. Sinuon again moved for advance indemnification. The district court initially denied Sinuon's motion, but the court of appeals reversed and remanded.

*Asian Women United of Minn. v. Leiendecker*, 789 N.W.2d 688, 689 (Minn. App. 2010). On remand, the district court concluded that Sinuon was entitled to indemnification, and then dismissed the lawsuit when AWUM declined to tender advance indemnification to Sinuon. The district court also entered judgment in favor of Sinuon to reimburse her for the costs and attorney fees that she had incurred prior to the dismissal.

In this lawsuit, now the fifth between the parties, the Leiendeckers seek to recover under a host of legal theories for the injuries allegedly inflicted by AWUM and the other defendants through the four previous lawsuits. Their complaint spans 116 pages, includes a total of 11 separately numbered claims, and names 18 defendants (plus some John Does and John Doe entities), including: AWUM; a current and a former executive director of AWUM; certain current and former AWUM board members; and individuals and companies that have provided professional services or expert testimony for AWUM. . . .

In the district court, AWUM moved for dismissal on a number of grounds, but the only ground relevant to this appeal arises out of Minnesota's anti-SLAPP statutes, Minn. Stat. §§ 554.01-.05 (2012). The anti-SLAPP statutes are directed at "SLAPP suits"—"Strategic Lawsuits Against Public Participation"—which are lawsuits that target the exercise of "[l]awful conduct or speech that is genuinely aimed in whole or in part at procuring favorable government action." Minn. Stat. § 554.03; *see also Middle-Snake-Tamarac Rivers Watershed Dist. v. Stengrim*, 784 N.W.2d 834, 839 (Minn. 2010). . . .

The district court dismissed most of the Leiendeckers' claims, but denied

AWUM's anti-SLAPP motion with respect to one: a claim for malicious prosecution.

*Leiendecker v. Asian Women United of Minn.*, 848 N.W.2d 224, 226-28 (Minn. 2014) (footnotes omitted).

■ A party moving to dismiss a claim based on the anti-SLAPP law must "make a threshold showing that the underlying 'claim materially relates to an act of the moving party that involves public participation.'" *Stengrim*, 784 N.W.2d at 841 (quoting Minn. Stat. § 554.02, subd. 1). After the moving party makes this threshold showing, the burden shifts to the responding party. Clauses 2 and 3 of Minnesota Statutes § 554.02, subdivision 2, explain the responding party's burden:

> (2) the responding party has the burden of proof, of going forward with the evidence, and of persuasion on the motion;
> (3) the court shall grant the motion and dismiss the judicial claim unless the court finds that the responding party has produced clear and convincing evidence that the acts of the moving party are not immunized from liability under section 554.03 . . . .

In the previous case involving these parties, we announced that the plain language of clause 3 requires the responding party to provide evidence—not mere allegations—to show by clear and convincing evidence that the moving party's acts are not immune. *Leiendecker*, 848 N.W.2d at 232-33. As we said then, under subdivision 2, "the responding party bears the burden to persuade the trier of fact—here, the district court—of the truth of a proposition." 848 N.W.2d at 231.

On remand, the court of appeals determined that AWUM had made a threshold showing that the lawsuit filed by the Leiendeckers materially related to an act by AWUM involving public participation. *Leiendecker v. Asian Women United of Minn.*, Nos. A12-1978, A12-2015, 2014 WL 7011061, at *3-4 (Minn. App. Dec. 15, 2014), *rev. denied* (Minn. Feb. 25, 2015). The court of appeals then remanded the case to the district court with instructions to apply the standard we articulated in *Leiendecker* to the Leiendeckers' response. 2014 WL 7011061, at *4.

At the district court, AWUM renewed its motion to dismiss under the anti-SLAPP law. In response, the Leiendeckers moved for an order declaring the anti-SLAPP law unconstitutional.[1] The district court found that the Leiendeckers fell short of proving by clear and convincing evidence that AWUM's acts were not immunized from liability. But the court concluded that Minn. Stat. § 554.02 violated the Leiendeckers' constitutional right to a jury trial. Minn. Const. art. I, § 4. As a result, the district court denied AWUM's motion to dismiss.

AWUM appealed and sought accelerated review. We granted AWUM's petition for accelerated review.[2] AWUM argues that

---

1. As the district court explained, although the Leiendeckers "broadly challenged the constitutionality" of the anti-SLAPP law, once the constitutional jury-trial challenge to Minn. Stat. § 554.02 was resolved, there was no need to address the Leiendeckers' other constitutional claims.

2. Although we refer only to AWUM in this opinion, we note that we also granted the petition for accelerated review filed by appellants Greenstein, Mabley & Wall, LLC, et al.,

which also challenged the district court's ruling on the constitutionality of section 554.02. The Leiendeckers also petitioned for accelerated review on their claims that the anti-SLAPP law is facially unconstitutional. We denied that petition. The Leiendeckers nonetheless presented in their brief for this appeal the additional constitutional challenges they raised before the district court, which that court did not address. Because we denied the Leiendeckers' petition for accelerated review

(1) the Leiendeckers waived their claim that the anti-SLAPP law is unconstitutional and (2) the law is constitutional in any event. Because we conclude that the Leiendeckers did not waive their constitutional claim and Minn. Stat. § 554.02 is unconstitutional as applied to the Leiendeckers' claim at law alleging a tort, we affirm.

## I.

Before proceeding to the merits of the constitutional argument, we must resolve two preliminary issues: whether the Leiendeckers waived their argument that the law is unconstitutional and whether the district court violated the court of appeals' remand instructions.

## A.

■ AWUM contends that the Leiendeckers waived their right to assert that the anti-SLAPP law is unconstitutional by failing to make that argument at any of three junctures: (1) in their petition for review of the court of appeals' 2013 decision, (2) in their petition for rehearing following our 2014 decision, and (3) in their second petition for review following the court of appeals' 2014 decision on remand. We conclude that the Leiendeckers' constitutional challenge was not ripe until the case was remanded to the district court and, therefore, could not have been waived at an earlier point in time.

■ The legal effect of a party's failure to raise an issue on appeal presents a question of law requiring de novo review. *See State v. Dahlin,* 753 N.W.2d 300, 304

(Minn. 2008) (reviewing de novo whether a party's decision not to petition for review on the legal issue addressed in an earlier writ proceeding waived appellate review of that issue in a subsequent appeal). "Waiver is the intentional relinquishment of a known right; it is the expression of an intention not to insist upon what the law affords...." *Carlson v. Doran,* 252 Minn. 449, 456, 90 N.W.2d 323, 328 (1958).[3] The focus here is on what the Leiendeckers asserted, or more correctly did not assert, in previous proceedings in this court. "[I]f a party petitions for review, the party must bring all claims then ripe in that petition for review or waive further review of such claims in our court." *Dahlin,* 753 N.W.2d at 304; *see also Peterson v. BASF Corp.,* 675 N.W.2d 57, 66 (Minn. 2004) (explaining that "to facilitate fair and efficient judicial proceedings, matters that are ripe for review should be brought to the court's attention when submitting a petition for review"), *vacated on other grounds,* 544 U.S. 1012, 125 S.Ct. 1968, 161 L.Ed.2d 845 (2005).

■ This issue also arises in the context of successive appeals. A claim becomes ripe when there is an intervening change in the law between a party's initial decision not to raise the claim because it would have been futile under then-existing law, and a later decision to raise that claim for the first time. *See State v. Lindquist,* 869 N.W.2d 863, 867-68 (Minn. 2015) (holding that a claim was not forfeited when "an intervening change in the law ... excused" the "failure to bring what would have otherwise been a futile argument"); *Peterson,* 675 N.W.2d at 68 (noting that there had

on these issues, we grant AWUM's motion to strike pages 37-48 of the Leiendeckers' brief filed on July 25, 2016.

**3.** In contrast to waiver, forfeiture refers to the failure to timely assert a right. *State v. Beaulieu,* 859 N.W.2d 275, 278 n.3 (Minn. 2015).

Waiver is the proper doctrine to apply here because AWUM asserts that the Leiendeckers intentionally refrained from asserting a known constitutional challenge to the anti-SLAPP statutes. *See id.* (explaining the distinction between the two doctrines).

been no "significant changes in the law or in the facts of the case that would make review" of the issue previously not raised "any different now than it would have been" in the first proceeding). An intervening change in the law is a new rule that overrules existing precedent. *Lindquist*, 869 N.W.2d at 867; *see also State v. Her*, 781 N.W.2d 869, 874-75 (Minn. 2010) (explaining the "different type of intent" required by an intervening decision and concluding "[t]his is a change in the law from" the court's precedent).

The Leiendeckers' constitutional challenge to the anti-SLAPP law was not ripe when we granted review of the court of appeals' 2013 decision. In that decision, the court of appeals determined that mere allegations in a complaint could satisfy the anti-SLAPP law's requirement that the responding party show by clear and convincing evidence that the moving party's acts are not immune, and that the anti-SLAPP law did not require the district court to weigh the evidence presented by the parties. *Leiendecker v. Asian Women United of Minn.*, 834 N.W.2d 741, 751 (Minn. App. 2013), *rev'd*, 848 N.W.2d 224 (Minn. 2014). Thus, the court of appeals *accepted* the Leiendeckers' argument that mere allegations in a complaint were sufficient to satisfy the respondent's burden in response to a motion to dismiss under Minn. Stat. § 554.02. 834 N.W.2d at 749. In reversing both components of the court of appeals' decision, we stated: "Before addressing the Leiendeckers' [statutory interpretation] argument, however, it is important to first note what the Leiendeckers do not argue. The Leiendeckers disclaim any argument that the anti-SLAPP statutes *actually* violate their jury-trial right." *Leiendecker*, 848 N.W.2d at 232. AWUM argues that in this comment, we foreclosed future constitutional challenges to the anti-SLAPP law. AWUM is mistaken.

▬ Waiver "must be based on a full knowledge of the facts." *Cohler v. Smith*, 280 Minn. 181, 189, 158 N.W.2d 574, 579 (1968). In its petition for review of the court of appeals' 2013 decision, AWUM asked us to interpret the anti-SLAPP law differently than the court of appeals. The Leiendeckers prevailed at the court of appeals, and that court's interpretation of section 544.02 did not present a jury-trial problem, so the Leiendeckers had no reason to assert a constitutional challenge to the statute. Instead, they argued that we must affirm the court of appeals based in part on a constitutional-avoidance argument. *See Leiendecker*, 848 N.W.2d at 232 (noting the "narrower" constitutional avoidance argument presented, under which we were asked to interpret the anti-SLAPP law in a manner that would uphold its constitutionality). Thus, only after we reversed the court of appeals did the Leiendeckers' claim under Article I, Section 4 of the Minnesota Constitution become viable.

Nor were the Leiendeckers obliged to assert a constitutional challenge when they petitioned for rehearing following our 2014 decision. At that point, we had already addressed the Leiendeckers' constitutional-avoidance argument. Thus, we remanded the case to the court of appeals to address whether AWUM had made its threshold showing under section 554.02. *Leiendecker*, 848 N.W.2d at 233. Raising new arguments that had not been presented in defending the court of appeals' decision or that were not yet ripe at the time of our initial review is not an appropriate use of a petition for rehearing. *See In re Estate of Carey*, 194 Minn. 127, 146, 260 N.W. 320, 328-29 (1935). Indeed, the Leiendeckers' current challenge is entirely based on our new interpretation of the law, which did not exist when we first reviewed this appeal, so they did not waive their

constitutional argument when they failed to raise it in a petition for rehearing.

■ Lastly, the Leiendeckers' constitutional argument was not ripe when they petitioned for review following the court of appeals' decision on remand, for two reasons: the claim was not addressed by the court of appeals on remand and the issue had not yet been raised before the district court. *See Woodhall v. State*, 738 N.W.2d 357, 363 n.6 (Minn. 2007) (noting that the parties had not raised a constitutional claim before the district court or the court of appeals, and in general, this court does "not consider issues not raised to the courts below"); *State v. Grunig*, 660 N.W.2d 134, 136 (Minn. 2003) ("[W]aiver ... is an administrative rule dictating that appellate courts will not decide issues that were not raised in the [district] court."). One reason for the waiver doctrine is to ensure the factual development of claims at the district court. *Johnson v. State*, 673 N.W.2d 144, 147 (Minn. 2004). The Leiendeckers had no prior opportunity to make their constitutional challenge at the district court, given that it did not become viable until after we reversed the court of appeals' decision based on our interpretation of section 554.02. Thus, they did not waive their constitutional challenge by failing to include it in their second petition for review to this court. *See Her*, 781 N.W.2d at 875 (explaining that the State had not "had the opportunity to develop a factual record regarding ... intent" based on the law reflected in intervening decisions).

### B.

■ We must also determine whether the district court overstepped the bounds of the court of appeals' remand instructions. "Appellate courts review a district court's compliance with remand instructions under the deferential abuse of discretion standard." *Janssen v. Best &*

*Flanagan, LLP*, 704 N.W.2d 759, 763 (Minn. 2005). "Though trial courts generally have broad discretion to determine how to proceed on remand, they cannot act in a way that is inconsistent with the remand instructions provided." *Dobbins v. State*, 845 N.W.2d 148, 156 (Minn. 2013) (citation omitted) (internal quotation marks omitted). A district court exceeds its broad discretion on remand when it makes findings on a subject not included in the appellate court's remand instructions. *See Sefkow v. Sefkow*, 427 N.W.2d 203, 213 (Minn. 1988).

The district court properly ruled on the constitutionality of the anti-SLAPP law. On remand, the district court received instructions to "apply the standard articulated by the supreme court to determine whether the Leiendeckers have met their burden" under the anti-SLAPP law. *Leiendecker*, 2014 WL 7011061, at *1. The court of appeals did not instruct the district court, either explicitly or implicitly, that it could not also address the constitutionality of the statute that the court of appeals asked it to apply. In fact, it would make little sense to prohibit the district court from considering the constitutionality of a statute, once raised by the parties, after applying the proper legal standard in light of the available record. In the absence of some specific statement by the court of appeals that the district court was not permitted to analyze the constitutionality of the statute on remand, we hold that the district court did not exceed its instructions on remand.

### II.

■ We now address the merits of AWUM's appeal: the constitutionality of Minn. Stat. § 554.02 as applied to the Leiendeckers' malicious prosecution claim. We review de novo both the constitutionality of statutes and the interpretation and

application of the Minnesota Constitution. *United Prairie Bank-Mountain Lake v. Haugen Nutrition & Equip., LLC*, 813 N.W.2d 49, 53 (Minn. 2012); *Deegan v. State*, 711 N.W.2d 89, 92 (Minn. 2006). We presume that statutes are constitutional. Minn. Stat. § 645.17(3) (2016); *In re Welfare of B.A.H.*, 845 N.W.2d 158, 162 (Minn. 2014). The "power to declare a statute unconstitutional should be exercised with extreme caution and only when absolutely necessary." *In re Haggerty*, 448 N.W.2d 363, 364 (Minn. 1989). But we exhibit a "watchful jealousy" of any "impairment of the right of a free and inviolate jury trial." *Flour City Fuel & Transfer Co. v. Young*, 150 Minn. 452, 458, 185 N.W. 934, 937 (1921). A law is unconstitutional if it renders the jury-trial right "so burdened with conditions that it is not a jury trial, such as the Constitution guarantees." *Id.* at 454, 185 N.W. at 935.

 Article I, Section 4 of the Minnesota Constitution establishes that the "right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy." The language of Article I, Section 4 is "categorical," permitting no exceptions. *United Prairie Bank*, 813 N.W.2d at 62. Denial of the jury-trial right is reversible error. *Landgraf v. Ellsworth*, 267 Minn. 323, 326, 126 N.W.2d 766, 768 (1964).

 The jury-trial right exists for any "type of action" for which a jury trial was provided when the Minnesota Constitution was adopted in 1857. *Olson v. Synergistic Techs. Bus. Sys., Inc.*, 628 N.W.2d 142, 149 (Minn. 2001). "The nature and character of the controversy, as deter-

mined from all the pleadings and by the relief sought, determines whether the cause of action is one at law *today*, and thus carries an attendant constitutional right to jury trial." *Abraham v. Cty. of Hennepin*, 639 N.W.2d 342, 349 (Minn. 2002). The jury-trial right does not extend to equitable claims. *Bond v. Welcome*, 61 Minn. 43, 44, 63 N.W. 3, 4 (1895). A tort action seeking money damages, however, is an action at law. *Abraham*, 639 N.W.2d at 353.

### A.

 Malicious prosecution is a claim at law, so the Leiendeckers are entitled to a jury trial. Specifically, malicious prosecution "is an action for a tort" with a right to damages. *Schmidt v. Bickenbach*, 29 Minn. 122, 123, 12 N.W. 349, 349-50 (1882). The tort of malicious prosecution has three elements: "(1) the action [must be] brought without probable cause or reasonable belief that the plaintiff would ultimately prevail on the merits; (2) the action must be instituted and prosecuted with malicious intent; and (3) the action must terminate in favor of the defendant." *Kellar v. VonHoltum*, 568 N.W.2d 186, 192 (Minn. App. 1997), *rev. denied* (Minn. Oct. 31, 1997). Both the probable cause and malice elements of a malicious prosecution claim are factual questions for the jury. *Smith v. Maben*, 42 Minn. 516, 518, 44 N.W. 792, 793 (1890) ("Malice ... is a distinct issue to be found, as a question of fact, by the jury."); *Burton v. St. Paul, Minneapolis & Manitoba Ry. Co.*, 33 Minn. 189, 192, 22 N.W. 300, 301 (1885) ("When the facts are in controversy, the subject of probable cause should be submitted to the jury....").[4]

---

**4.** Contrary to the dissent's position, the district court resolved at least one factual dispute when analyzing the element of probable cause. The district court determined that

"[a]bsent Lawrence's advice to Sinuon, it is unlikely AWUM would have formed a new board at that time." Summary judgment is appropriate only if "there is no genuine issue

Subdivision 2 of Minnesota Statutes § 554.02 unconstitutionally instructs district courts to usurp the role of the jury by making pretrial factual findings that can, depending on the findings, result in the complete dismissal of the underlying action. Our 2014 decision stated that "the responding party bears the burden to persuade the *trier of fact—here, the district court*" by a showing of clear and convincing evidence that the acts of the moving party are not immune. *Leiendecker*, 848 N.W.2d at 231 (emphasis added). But the role of resolving disputed facts belongs to the jury, not the court. *Gabrielson v. Warnemunde*, 443 N.W.2d 540, 543 n.1 (Minn. 1989).

Specifically, clauses 2 and 3 of Minnesota Statutes § 554.02, subdivision 2, combine to abrogate the Leiendeckers' jury-trial right. Clauses 2 and 3 provide:

> (2) the responding party has the burden of proof, of going forward with the evidence, and of persuasion on the motion;
> (3) the court shall grant the motion and dismiss the judicial claim unless the court finds that the responding party has produced clear and convincing evidence that the acts of the moving party are not immunized from liability under section 554.03 . . . .

Clause 2 imposes on the responding party the burdens of proof, production, and persuasion. The burden of production is "the obligation of a party to come forward with sufficient evidence to support its claim or the relief requested." *Braylock v. Jesson*, 819 N.W.2d 585, 590 (Minn. 2012); *see also Burden of Production, Black's Law Dictionary* (10th ed. 2014). The burden of persuasion is "the

obligation to persuade the trier of fact of the truth of a proposition." *Braylock*, 819 N.W.2d at 590; *see also Burden of Persuasion, Black's Law Dictionary*, *supra*. Since the middle of the twentieth century, the term "burden of proof" has been used synonymously with the term "burden of persuasion." *Dir., Office of Workers' Comp. Programs v. Greenwich Collieries*, 512 U.S. 267, 276, 114 S.Ct. 2251, 129 L.Ed.2d 221 (1994).

Clause 3 animates the burdens allocated by clause 2. Clause 3 requires the responding party to "produce[ ] . . . evidence" (the burden of production) that persuades the district court by a "clear and convincing" standard (the burden of persuasion) that the moving party's acts are not immune under the anti-SLAPP law. Clear and convincing evidence refers to a burden of persuasion. *Braylock*, 819 N.W.2d at 591 ("[T]he burden of persuasion . . . is usually expressed in terms of the degree to which a fact-finder must be convinced of the existence of a particular fact—by a preponderance of the evidence, clear and convincing evidence, or proof beyond a reasonable doubt."). We have used clause 3's phrase, "produced clear and convincing evidence," to describe what a party must do to satisfy a burden of *persuasion*, not a burden of production. *Jacobson v. $55,900 in U.S. Currency*, 728 N.W.2d 510, 522 (Minn. 2007) ("[T]he prosecuting agency, in order to prevail, must meet its burden of persuasion by producing clear and convincing evidence that the defendant property is connected to drug trafficking."). This settled usage confirms that section 554.02 requires the responding

as to any material fact." Minn. R. Civ. P. 56.03. "[A]ll factual inferences must be drawn against the movant for summary judgment." *Sauter v. Sauter*, 244 Minn. 482, 485, 70 N.W.2d 351, 353 (1955). Here, the district

court made factual inferences on the probable cause element, while recognizing that "by making these findings, [the district court] has taken away part of the jury's role: to determine the factual validity of Plaintiffs' claim."

party to persuade the district court in its role as a trier of fact.

Clauses 2 and 3 violate the responding party's right to a jury trial in two ways as applied to actions at law alleging torts.[5] First, they transfer the jury's fact-finding role to the district court. Second, they require the responding party to meet a higher burden of proof before trial (clear and convincing evidence) than it would have to meet at trial (preponderance of the evidence). *See Nelson v. Int'l Harvester Co. of Am.*, 117 Minn. 298, 301, 135 N.W. 808, 810 (1912) (applying a preponderance-of-the-evidence standard to a malicious prosecution claim).

The law provides the district court with two options to resolve a motion to dismiss. The district court could decide that the responding party failed to show by clear and convincing evidence that the moving party engaged in tortious conduct. This determination would require dismissal of the suit under the anti-SLAPP law, thus precluding a jury trial. Alternatively, the district court could decide that the responding party *did* show by clear and convincing evidence that the moving party engaged in tortious conduct. This conclusion would also arguably preclude a jury trial. *See Leader v. Joyce*, 271 Minn. 9, 135 N.W.2d 34, 37 (1965) ("A party has no right to a jury trial of a fact issue previously decided and binding on him by principles of res judicata and privity."). Thus, a district court's ruling on anti-SLAPP immunity necessarily decides the merits of the tort action itself. This result unconstitutionally abridges Article I, Section 4.

In a similar case, the Washington Supreme Court agreed. That court determined that Washington's anti-SLAPP law—which it described as "close to" Minnesota's—violated Washington's constitutional jury-trial guarantee. *Davis v. Cox*, 183 Wash.2d 269, 351 P.3d 862, 871, 874 (2015). Like Minnesota's anti-SLAPP law, the Washington law's requirement that the responding party "establish by clear and convincing evidence a probability of prevailing on the claim," Wash. Rev. Code § 4.24.525 (2014), "invades the jury's essential role of deciding debatable questions of fact," *Davis*, 351 P.3d at 874.

We also note that, procedurally, Minn. Stat. § 554.02 is unlike other judicial gatekeeping laws. For example, the heightened pleading standard in the Private Securities Litigation and Reform Act, 15 U.S.C. § 78u-5(c) (2012), does not resemble the anti-SLAPP statute. When assessing a claim under that standard, a court must "constantly assum[e] the plaintiff's allegations [are] true," and "a plaintiff is not forced to plead more than she would be required to prove at trial." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326-28, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007). By comparison, a court assessing a claim under Minn. Stat. § 554.02 must "make a finding" based on evidence, rather than assuming that the allegations are true. And the party responding to an anti-SLAPP motion must meet a clear-and-convincing-evidence standard, rather than the preponderance-of-the-evidence standard that would apply at trial.

AWUM's analogy between the anti-SLAPP law and Minnesota's punitive damages statute fails for the same reason. Minnesota Statutes § 549.191 (2016) precludes plaintiffs from seeking punitive

---

5. The anti-SLAPP law requires the responding party to prove that the moving party's acts "constitute[] a tort or a violation of a person's constitutional rights." Minn. Stat. § 554.03. As only one claim remains in this action, a tort claim for malicious prosecution, we do not need to decide whether the anti-SLAPP law is unconstitutional as applied to alleged violations of a person's constitutional rights.

damages without first filing "one or more affidavits showing the factual basis for the claim." The district court "may not allow an amendment where the motion and supporting affidavits do not reasonably allow a conclusion that clear and convincing evidence will establish the defendant acted with willful indifference." *Gamma-10 Plastics, Inc. v. Am. President Lines, Ltd.*, 32 F.3d 1244, 1255 (8th Cir. 1994) (quoting *Swanlund v. Shimano Indus. Corp.*, 459 N.W.2d 151, 154 (Minn. App. 1990)) (internal quotation marks omitted). Under the punitive damages statute, the moving party must establish a prima facie case by clear and convincing evidence, which consists only of producing evidence that will "reasonably allow" a conclusion of willful indifference, much like a summary-judgment standard. *Id.* (quoting *Swanlund*, 459 N.W.2d at 154) (internal quotation marks omitted). Unlike the anti-SLAPP law, the punitive damages statute does not require a party to *actually* prove its claim by clear and convincing evidence to the district court.

Nor are Minnesota's substantive immunities affected by our holding that Minn. Stat. § 554.02 is unconstitutional as applied to claims at law alleging torts. AWUM argues that the anti-SLAPP law resembles other immunities enacted by the Minnesota Legislature. *See, e.g.*, Minn. Stat. § 214.34 (2016) (immunizing parties submitting health reports from civil liability); Minn. Stat. § 604A.12, subd. 2 (2016) (immunizing parties donating livestock services from civil liability). These are substantive immunities; they immunize participants in certain categories of activity. Like the above statutes, the anti-SLAPP law creates a substantive immunity: nontortious conduct or speech aimed at procuring favorable government action. What differentiates section 554.02 is its procedural requirement that the responding party prove by clear and convincing evi-

dence that its claim falls outside the law's substantive immunity. The Legislature can immunize a category of people from lawsuits, but it cannot interpose the district court as the fact-finder in actions at law.

 AWUM contends that because the anti-SLAPP law does not specify a right to a jury trial on the issue of anti-SLAPP immunity, the responding party is entitled to a jury trial only after immunity is denied. We do not decide whether anti-SLAPP immunity is a form of equitable relief wholly apart from the actual merits of a tort claim, because even if it is, the law still abridges the Leiendeckers' jury-trial right. Allowing equitable immunities that are identical to a plaintiff's cause of action would permit the Legislature to erode the jury-trial right by sleight of hand. "[F]actual findings that are common to both claims at law and claims for equitable relief are binding upon the district court." *Onvoy, Inc. v. ALLETE, Inc.*, 736 N.W.2d 611, 617 (Minn. 2007). But "[b]y extending equitable jurisdiction to new subjects, the Legislature cannot impair the right to trial by jury." *Westerlund v. Peterson*, 157 Minn. 379, 385, 197 N.W. 110, 112 (1923). The anti-SLAPP law requires the district court to determine whether defendants are "immunized from liability." Minn. Stat. § 554.02. This purportedly equitable finding on immunity is actually a factual finding regarding the defendants' tort liability. Because this finding is precisely what the responding party would have to prove to a jury, the district court's immunity ruling would cut the jury out of the case—or at the least, render it superfluous.

### B.

 Having decided that clauses 2 and 3 of section 554.02, subdivision 2, are unconstitutional as applied to claims at law

alleging torts, we must now determine whether these provisions are severable from the remainder of section 554.02. Provisions of a law are severable unless they are "so essentially and inseparably connected with, and so dependent upon, the void provisions that the court cannot presume the legislature would have enacted the remaining valid provisions without the void one" or "the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent." Minn. Stat. § 645.20 (2016). If a statute has unconstitutional applications, they are severable from the constitutional applications. *See Hoene v. Jamieson*, 289 Minn. 1, 7, 182 N.W.2d 834, 838 (1970) (severing an unconstitutional application from the law's constitutional applications).

The two unconstitutional clauses of Minn. Stat. § 554.02 are inseparable from the remainder of the section. Without the unconstitutional provisions, section 554.02 provides no procedure for courts to determine whether a lawsuit violates the substantive prohibition of Minn. Stat. § 554.03. We therefore conclude that Minn. Stat. § 554.02 is unconstitutional when it requires a district court to make a pretrial finding that speech or conduct is not tortious under Minn. Stat. § 554.03, as was the case here. For the foregoing reasons, Minn. Stat. § 554.02 is unconstitutional as applied to claims at law alleging torts.

Affirmed.

## DISSENT

GILDEA, Chief Justice (dissenting).

The majority strikes down Minn. Stat. § 554.02 (2016) of the anti-SLAPP statutes as unconstitutional as applied to claims at law alleging torts. Specifically, the majority holds that the statute violates the right to jury trial because the statute requires that the district court judge resolve fact issues. It is not necessary, in my view, to reach the broad issue the majority decides. We presume that statutes are constitutional. *Midland Glass Co. v. City of Shakopee*, 303 Minn. 134, 138, 226 N.W.2d 324, 326 (1975). And our precedent recognizes that we resolve cases without reaching constitutional issues whenever possible. *See Erlandson v. Kiffmeyer*, 659 N.W.2d 724, 732 n.7 (Minn. 2003) ("Our general practice is to avoid a constitutional ruling if there is another basis on which a case can be decided."); *In re Senty-Haugen*, 583 N.W.2d 266, 269 n.3 (Minn. 1998) ("It is well-settled law that courts should not reach constitutional issues if matters can be resolved otherwise."). In this case, it is not necessary to decide whether section 554.02 of the anti-SLAPP statutes violates the jury-trial right because the dispositive question that the district court decided was one of law. A judge's resolution of questions of law does not violate the jury-trial right.[1] *See Smith v. Stewart*, 41 Minn. 7, 8, 42 N.W. 595, 596 (1889) (stating that questions of law are determined by the court and not the jury). I would resolve this case on this more narrow ground and not reach the constitutional question the majority decides. I am concerned that the majority's resolution of this case may undermine the summary judgment remedy. The majority does not contend that rulings made on summary judgment violate the jury-trial right. But courts are likely to see such arguments in the future based on the rule the majority announces today. For these reasons, I dissent.

The complaint alleges malicious prosecution. The anti-SLAPP statutes provide an

---

1. AWUM argued before the district court that rulings as a matter of law do not violate the jury-trial right and it makes the same argument here.

immunity to defendants and AWUM invoked that immunity. *See* Minn. Stat. § 554.03 (2016). To overcome the immunity defense, the statute requires that the Leiendeckers show by clear and convincing evidence that AWUM's actions are not immune. *See* Minn. Stat. § 554.02, subd. 2. The parties agree that the Leiendeckers would have met that burden if they proved the elements of their malicious prosecution claim.

The tort of malicious prosecution requires that the Leiendeckers prove that AWUM brought a lawsuit without probable cause and with malice. *See Allen v. Osco Drug, Inc.*, 265 N.W.2d 639, 642, 645 (1978) (discussing malicious prosecution); *Virtue v. Creamery Package Mfg. Co.*, 123 Minn. 17, 32-33, 142 N.W. 930, 936 (1913) (same). In addition, the Leiendeckers must prove that AWUM's lawsuit terminated in favor of the Leiendeckers. *See Virtue*, 123 Minn. at 32-33, 142 N.W. at 936. We have recognized that within the context of malicious prosecution, the first element—probable cause—is a question of law if the facts are undisputed. *Allen*, 265 N.W.2d at 642. In my view, the probable cause element is dispositive of the issues raised in this appeal.

The district court here concluded that AWUM brought the lawsuit underlying the malicious prosecution claim with probable cause. Specifically, on the legal malpractice claim against Lawrence Leiendecker in the underlying action, the court relied on determinations in prior district court proceedings and undisputed testimony from the Leiendeckers' themselves. Similarly, on the conversion claim against Sinuon Leiendecker in the underlying action, the court based its conclusion on uncontroverted facts about Sinuon's salary and an unchallenged incident demonstrating her ability to give herself money with little oversight. The district court here did not find facts and did not need to make any credibility determinations on the probable cause element. Indeed, the parties themselves did not dispute the facts relating to the element of probable cause. In short, the district court's conclusion that the Leiendeckers failed to show a lack of probable cause was a ruling as a matter of law.[2]

On appeal, the Leiendeckers do not contend otherwise and their brief points to no disputes of fact as to the probable cause element. The fact that the district court made findings of fact when analyzing the other elements of the tort is not dispositive here. The Leiendeckers' failure to show a lack of probable cause is dispositive. Because the district court's resolution of the legal question of probable cause did not

---

**2.** The majority points to only one statement in the district court order to support its conclusion that there were factual disputes on the issue of probable cause on the legal malpractice claim against Lawrence. Notably, the majority does not identify any factual disputes on the issue of probable cause on the conversion claim against Sinuon. As to Lawrence, the majority notes that the district court determined that "[a]bsent Lawrence's advice to Sinuon, it is unlikely AWUM would have formed a new board at that time." The district court, however, did not have to choose between conflicting evidence or resolve conflicting inferences in order to make this conclusion. *See Scheiber v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co.*, 61 Minn. 499, 500, 63 N.W. 1034, 1034 (1895) (stating that in the absence of "fair doubt" as to the inferences to be drawn from undisputed facts, "it is ... the duty of the court to decide the question as one of law"). Indeed, the Leiendeckers did not contest at the district court (or on appeal) the fact that AWUM relied on Lawrence's advice when it decided to form a new board. In contending that AWUM's legal malpractice claim was brought maliciously, the Leiendeckers argued Lawrence's advice was not malpractice. They did not argue that AWUM did not receive advice from Lawrence or rely on the advice he gave. Because there were no factual disputes that required resolution, the district court properly determined probable cause as a matter of law.

violate the Leiendeckers' right to a jury trial and the court's resolution of the probable cause element is dispositive of the immunity issue, I would reverse.[3]

---

**3.** The Leiendeckers also raise alternate constitutional challenges to the anti-SLAPP law, but the district court did not rule on these matters and so they are not properly before our court in this appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582-83 (Minn. 1988).