*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0779**

State of Minnesota,
Respondent,

vs.

Rodney Donta Jackson,
Appellant.

**Filed March 11, 2024**
**Affirmed**
**Frisch, Judge**

Hennepin County District Court
File No. 27-CR-18-27618

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Brittany D. Lawonn, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Julie Loftus Nelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Frisch, Judge; and Gaïtas, Judge.

**NONPRECEDENTIAL OPINION**

**FRISCH**, Judge

Following remand from the supreme court, appellant argues that the district court abused its discretion because it did not comply with remand instructions and denied his

motion for a new trial. Because we discern no abuse of discretion by the district court in its proceedings on remand or in denying appellant's motion for a new trial, we affirm.

## FACTS

Following a 2018 shooting, respondent State of Minnesota charged appellant Rodney Donta Jackson with first-degree premeditated murder in violation of Minn. Stat. § 609.185(a)(1) (2018), and second-degree intentional murder in violation of Minn. Stat. § 609.19, subd. 1(1) (2018). The matter proceeded to trial, and the jury found Jackson not guilty of first-degree premeditated murder and guilty of second-degree intentional murder.

After the jury returned its verdict, the district court received a juror evaluation form in which a juror, M.H., revealed that they may have provided extraneous information during the jury deliberations. In response to a question asking what one of the prosecutors could have done to improve their performance, M.H. wrote:

> Presented info on conceal [and] carry—responsibility of self defense should have explained what [Jackson] would have learned in conceal and carry class regarding MN law about obligation to retreat. This jury was going for self defense and [n]ot guilty before I shared what's taught in permit class. Even regarding just discharging a weapon in [Minneapolis] even if he'd shot at ground or in the air! As you suggested.

The district court notified the parties, and Jackson moved for a *Schwartz* hearing.[1] The district court held a *Schwartz* hearing in two parts. During the first part of the hearing,

---

[1] *See Schwartz v. Minneapolis Suburban Bus Co.*, 104 N.W.2d 301, 303 (Minn. 1960) (permitting a district court to examine a juror regarding alleged juror misconduct in the presence of the parties).

the district court closed the courtroom to the public during the testimony of two jurors,

including M.H., who testified as follows:

> THE COURT: So do you recall any discussion during deliberations about classes or instruction on concealed carry or permit to carry?
> M.H.: Yes.
>
> THE COURT: Okay. Can you tell me specifically what you recall about that?
> M.H.: What I recall is that we had all gone around and talked about why we believed what we believed. We were each given a chance to share. And I brought it up. I asked if anybody else had a permit. Somebody else did. And I said: One thing that [Jackson] would have found out in his class is that it's very dangerous to ever use your weapon because it will be held against you many times, even if you try to use it for good purposes.
> . . . .
> Okay. And I said: The one thing that you learn is that if you have the option to get away, if you can safely get away, you get away instead of using a lethal weapon. You don't kill somebody because you're mad because they trashed talked to you or did something to you. It would be because you feel like your life is absolutely threatened and you didn't have any other option.
>
> THE COURT: Okay. So you—your recollection is that you were the person that brought this up?
> M.H.: I brought it up.
>
> THE COURT: Okay. And you shared it with the whole group or a few people or—
> M.H.: I shared it with the group. I said that that's—I said that he should have known that. But I said it was no different than what the prosecution had brought up, and that is that he had—he was already in the car. He could already get away. And so we talk—we had talked about all those things. So I said it goes along with what he would have learned in class.
>
> THE COURT: Okay. And did that come up once or more than once? I know it's hard because deliberations are not linear

3

particularly. But you recall this part when you were going around in a circle and it came up then. Did it then come up later as well, or was that just it?

M.H.: I don't recall it coming up later.

THE COURT: Okay. Was there much discussion of that after you shared what you told us?

M.H.: No. The only discussion was the other person who had a permit also said that that's what she learned.

THE COURT: Okay.

M.H.: Except if you're in Florida or Texas.

THE COURT: Okay. All right. Those are the questions that I have.

The remaining ten jurors testified during a second hearing in a courtroom open to the public. Jackson then moved for a new trial, which the district court ultimately denied. Jackson appealed.

In his first appeal, Jackson challenged in pertinent part the district court's partial closure of the *Schwartz* hearing as a violation of his constitutional rights and the denial of his motion for a new trial. *State v. Jackson*, 964 N.W.2d 659, 664 (Minn. App. 2021), *aff'd*, 977 N.W.2d 169 (Minn. 2022). We concluded that the Sixth Amendment right to a public trial extends to a *Schwartz* hearing and that the closure of that portion of the *Schwartz* hearing violated Jackson's Sixth Amendment rights. *Id.* at 665-66. We concluded that the appropriate remedy was for the district court to repeat the closed portion of the *Schwartz* hearing with the two jurors and, if their testimony was materially different from their testimony in the first hearing, to recall the other ten jurors for additional testimony. *Id.* at 666-67. We did not reach the issue of whether the district court erred by declining to grant a new trial. *Id.* at 667.

4

Jackson appealed our decision to the supreme court, and the supreme court affirmed. *State v. Jackson*, 977 N.W.2d 169, 171 (Minn. 2022) (*Jackson I*). The supreme court instructed the district court to repeat the closed portion of the *Schwartz* hearing. *Id.* at 176. The supreme court also instructed the district court that "[i]f the two jurors testify in a manner that is materially different from how they testified in the original proceeding, then the district court should conduct a new, public *Schwartz* hearing involving the remaining 10 jurors." *Id.*

On remand, the district court conducted a public *Schwartz* hearing with the two jurors. Juror M.H. testified as follows:

> THE COURT: . . . During deliberations on that case, was there any discussion of conceal carry?
> M.H.: At the very end after we had decided—okay. Two things. One thing, when we began I asked if anybody else had a conceal and carry permit, but we didn't discuss it. At the very end after the jury had already made their decisions—do you want me to amplify?
>
> THE COURT: Yes.
> M.H.: Okay. So we talked about there's different reasons for carrying a gun. It can be—it can be legal, you can be military, you can be hunting, or you can carry it as self-defense, which isn't a bad idea today. But as self-defense, it means, then, that somebody—you are feeling like your life is threatened. It's your life or their life. So we talked about that as a jury.
>
> THE COURT: Okay.
> M.H.: And the—do you want me to keep going?
>
> THE COURT: Well, you're telling me this was after the verdict form was signed?
> M.H.: After the verdict form was signed and we had already decided, we had gone around and what everybody had decided, then—okay. So there were three reasons—I believe there was three reasons why we came to the conclusion that we did, and

5

my comment was it would go along with the self-defense if he had a conceal and carry, which I didn't know if he did. He had a permit—I didn't know what kind of permit, if he got it in Texas or where he got it—but then he would have heard also what it meant to have self-defense.

THE COURT: Okay.
M.H.: When you're allowed to kill somebody.

THE COURT: Do you recall whether or not the Court gave you any instruction on self-defense under the law?
M.H.: I do not recall about the Court giving—talking about self-defense. I think that it's something that we all discussed, because you decide when it's okay to kill somebody and not kill somebody.

THE COURT: Do you recall any instruction regarding a duty to retreat?
M.H.: No.

Jackson argued that M.H.'s testimony was materially different than their testimony at the first *Schwartz* hearing and requested that the district court recall the remaining ten jurors for further testimony. The district court denied the request, determining that M.H.'s testimony was not materially different at the second hearing, stating that M.H.'s "statement was more expansive than [their] previous statement" and noting "that in the transcript of the previous hearing, [they] made comments about how nervous [they were]. [They] did not appear to be so nervous today." The district court concluded that "the differences were not material" and denied Jackson's motion for a new trial.

Jackson appeals.

**DECISION**

Jackson argues that the district court abused its discretion by failing to comply with remand instructions and by denying his motion for a new trial. We disagree and address each argument in turn.

## I. The district court did not abuse its discretion in its proceedings on remand.

The supreme court instructed the district court on remand to reconduct the portion of the *Schwartz* hearing that was improperly closed to the public and to conduct a public *Schwartz* hearing with the remaining ten jurors "[i]f the two jurors testify in a manner that is *materially different* from how they testified in the original proceeding." *Jackson I*, 977 N.W.2d at 176 (emphasis added). District courts generally have broad discretion to determine how to proceed on remand but must act consistent with the remand instructions provided. *Leiendecker v. Asian Women United of Minn.*, 895 N.W.2d 623, 633 (Minn. 2017). Jackson argues that, during the proceedings on remand, M.H.'s testimony was materially different than their testimony at the first hearing, and therefore the district court was required to recall the remaining ten jurors back for additional testimony.

As a threshold matter, we agree that M.H. provided different testimony at the two hearings. At the first hearing, M.H. indicated that a discussion regarding Jackson's permit to carry a concealed weapon occurred early in deliberations. M.H. also suggested that they knew what Jackson would have learned in obtaining such a permit and indicated that they knew specifically what type of permit Jackson had. At the second hearing, M.H. stated that this discussion occurred after the verdict form was signed. And M.H. stated that they

did not know what type of permit Jackson had. M.H.'s testimony was therefore different at the two hearings.

But we do not discern any abuse of discretion in the district court's conclusion that these differences in testimony were not material. Although the remand instructions did not specifically define what would constitute a material difference in testimony, as part of its remand instructions, the supreme court specifically rejected Jackson's request to repeat the entire *Schwartz* hearing because Jackson had "not shown why it would be necessary to repeat the testimony from the 10 unaffected jurors." *Jackson I*, 977 N.W.2d at 176. Like the circumstances in *Jackson I*, Jackson has not shown why the differences in M.H.'s testimony necessitate repeating the testimony from the remaining jurors. And Jackson has not identified how any difference in M.H.'s testimony would impact the basis for the district court's decision denying his new-trial motion. *See Black's Law Dictionary* 1170 (11th ed. 2019) (defining "material" as "[o]f such a nature that knowledge of the item would affect a person's decision-making"). Even construing M.H.'s testimony at the second *Schwartz* hearing in Jackson's favor, that testimony does not support his motion for a new trial because if, as M.H. testified, extraneous discussions occurred after the jury completed its deliberations, such discussions did not affect the verdict. *See State v. Cox*, 322 N.W.2d 555, 559 (Minn. 1982) (stating considerations for reviewing the effect of outside influences on a jury verdict).

We also do not discern an abuse of discretion in the district court's remand proceedings because the instruction to bring back the remaining ten jurors is permissive, not mandatory. The supreme court stated that the district court "should" bring back the

8

remaining jurors if it determined that the two jurors testified in a materially different manner during the second hearing. *Jackson I*, 977 N.W.2d at 176; *see In re Jacobs*, 802 N.W.2d 748, 754 (Minn. 2011) (explaining that "should" is a permissive term (quotation omitted)). Because the district court properly determined that the testimony was not materially different and would not affect the new-trial motion, we see no abuse of discretion by the district court in its proceedings on remand.

## II. The district court did not abuse its discretion by denying Jackson's motion for a new trial.

Jackson argues that the district court abused its discretion by denying his motion for a new trial because the pertinent factors for determining whether he is entitled to a new trial weighed in his favor. We disagree.

On appeal, "the proper procedure for reviewing a jury verdict is to determine from juror testimony what outside influences were improperly brought to bear upon the jury and then estimate their probable effect on a hypothetical average jury." *Cox*, 322 N.W.2d at 559. In so doing, we independently evaluate the verdict, considering (1) "the nature and source of the prejudicial material," (2) "the number of jurors exposed to the influence," (3) "the weight of the evidence properly before the jury," and (4) "the likelihood that curative measures were effective in reducing the prejudice." *Id.* These are known as the *Cox* factors.

We review a district court's determination regarding a motion for a new trial based on jury exposure to improper outside material for an abuse of discretion. *Id.* at 560. "[T]he

9

district court is in the best position to evaluate whether prejudice, if any, warrants a mistrial." *State v. Marchbanks*, 632 N.W.2d 725, 729 (Minn. App. 2001).

We agree with Jackson that certain *Cox* factors weigh in favor of a new trial. The number of jurors exposed to the extraneous information—all 12 jurors—weighs in favor of a new trial. We also agree that a curative instruction could have reduced the prejudicial effect of extraneous information. But the district court did not give a curative instruction because it learned that the jury was exposed to extraneous information after it was dismissed. This factor therefore weighs in favor of a new trial. *State v. Mallick*, No. A18-0756, 2019 WL 1104820, at \*5 (Minn. App. Mar. 11, 2019) (reasoning that because a curative instruction could not be given when the district court became aware of the issue, this factor "necessarily weighs in favor of a new trial").[2]

We do not, however, discern an abuse of discretion by the district court in weighing the remaining *Cox* factors against granting a new trial. Jackson first argues that the district court abused its discretion in not weighing the nature and source of the prejudicial material in favor of granting a new trial because M.H.'s comments were not subject to cross-examination, suggested that Jackson was irresponsible and acted in an unlawful manner, suggested that Jackson knew or should have known certain information based on what he would have learned in a permit class, and diverted attention to topics not presented to the jury. Given the nature and source of the extraneous information, the district court did not abuse its discretion by weighing this factor against granting a new trial.

---

[2] We cite nonprecedential opinions for their persuasive authority. Minn. R. Civ. App. P. 136.01, subd. 1(c).

It is significant that another juror was the source of the extraneous information. The district court had instructed the jury to disregard such extraneous material in deliberations. The district court specifically instructed the jury that "[t]he evidence that you are to consider in this case is the testimony you hear from the witness stand and any exhibits that are entered into evidence" and that "[n]othing you hear or see outside this courtroom is to be considered by you." The district court further instructed the jury to "disregard anything you may have seen or heard elsewhere about this case." We presume that jurors follow the district court's instructions. *State v. Miller*, 573 N.W.2d 661, 675 (Minn. 1998). These instructions effectively notified the jury to disregard any extraneous information offered by M.H.

We also note that the substance of the extraneous information was not necessarily inconsistent with the substance of the district court's instructions defining self-defense. The district court instructed jurors that Jackson was only entitled to the defense if his decision to defend was "as a reasonable person would have made in light of the danger perceived and the existence of any alternative way of avoiding the peril" and if "there was no reasonable possibility of retreat to avoid the danger." M.H. told the other jury members that Jackson could only assert self-defense if his life was threatened and he was without another option. This characterization of the duty to retreat is not necessarily inconsistent with the law as instructed by the district court. In light of instructions given by the district court, we cannot say that the district court abused its discretion by determining that this factor did not weigh in favor of a new trial.

11

Jackson next argues that the weight of the evidence properly before the jury favors granting a new trial because this was a "close case," Jackson presented circumstantial evidence that the victim had a gun and that the victim's friend hid the gun, and the jury asked to review video evidence during deliberations and asked if they could get closer to the screen. We do not agree that the district court abused its discretion in weighing this factor against granting a new trial.

It is true that Jackson presented evidence showing that he told the investigator that he believed that the victim had a gun and his girlfriend testified that the victim and the victim's friend made death threats toward her and may have made gestures indicating that they had a gun. And defense counsel elicited testimony suggesting that people had removed or could have removed a gun from the victim's body. But the state elicited testimony from seven witnesses, including Jackson's girlfriend, that they did not see the victim or anyone with a gun. The state also elicited testimony from six witnesses that they did not see anyone tamper with the victim's body. The medical examiner's supervisor testified that the victim had an entrance gunshot wound in the back of his head and a partial exit gunshot wound on his face and forehead. And the state presented evidence that Jackson shot the victim while pulled over on the street, across from the gas station, and drove off following the shooting. This testimony was corroborated by multiple videos depicting the shooting and its aftermath, and the district court emphasized the strength of this particular evidence in its evaluation of this factor. We therefore see no abuse of discretion by the district court in its determination that the weight of the evidence properly before the jury did not weigh in favor of a new trial.

**Affirmed.**