OPINION
LILLEHAUG, Justice.
In 200,7, respondents Curtis and. Stacy Marks filed Minnesota tax returns, claiming they were part-year residents of the state. Following an audit, the Commissioner of Revenue (the Commissioner) determined that the Markses were full-year residents and assessed additional income tax, penalties, and interest. The Markses appealed, arguing that the Commissioner improperly applied the definition of “resident” in Minn.Stat. § 290.01, subd. 7(b) (2014). The tax court granted summary judgment to the Markses. .Because we conclude that the tax court’s interpretation of the statute was erroneous, we reverse and remand.
I.
Curtis and Stacy Marks moved from Minnesota to Florida in 1999. Though they became Florida domiciliaries that year, they continued to maintain- a home in Minnesota and spent significant time here. On August 1, 2007, the Markses re-established domicile in Minnesota. During 2007, Curtis Marks was physically present or domiciled in Minnesota for a total of 257 days (70% of the year).[1] When the Marks-es filed their Minnesota tax return for 2007, they claimed part-year resident status.
In 2009, the Commissioner began an audit of the Markses’ prior year tax returns, including their return for 2007. In November 2010, the Commissioner determined that the definition of “resident” in Minn.Stat. § 290.01, subd. 7(b), applied to the Markses for the 2007 tax year and that they were therefore full-year residents of Minnesota that year.' The Commissioner allocated the Markses’ worldwide income for the full year to Minnesota and assessed additional income tax, penalties, and interest in the áinount of $626,719.81. The Markses' filed an "administrative appeal, and the Commissioner upheld the ruling, resulting in a balance due of $650,789.38.
The Markses appealed the Commissioner’s determination to the tax court, where the parties filed cross-motions for summary judgment based on their respective statutory interpretations. The tax court granted the Markses’ motion and denied the Commissioner’s motion, concluding that the Markses were not residents under the statute because' they spent fewer than 183' days' in Minnesota prior to becoming domiciled here,' and “the only days that may be ággregatéd for purposes of satisfying the [physical presence] requirements of subdivision 7(b) are those spent in Minnesota while ‘domiciled outside the state.’ ”
Based on the tax. court’s order and a stipulation that the Markses established Minnesota domicile on August 1, 2007, the parties stipulated to the proper allocation of the Markses’ income. The stipulated allocation resulted in the Markses owing additional tax, penalties, and interest of $271,623.89. The tax court entered an Order for Judgment requiring the Markses to pay that amount. This appeal followed. The amount in dispute is at least $379,000.
II.
The Commissioner contends that the tax court’s interpretation of Minn.Stat. § 290.01, subd. 7(b), is erroneous and that *324 the plain language of the statute allows the Commissioner, to count all days an individual spent in Minnesota in a given tax year to determine whether the individual was a “resident” of the state. The Markses, on the other hand, argue that the tax court correctly held that the statute’s plain language allows the counting of only days spent in Minnesota as nondomiciliaries.
We review de novo whether the tax, court committed an error of law, such as an erroneous interpretation of a statute. ILHC of Eagan, LLC v. Cty. of Dakota, 693 N.W.2d 412, 418-19 (Minn.2005). When we interpret statutes, our objective is to ascertain and effectuate the intent of the Legislature. Brayton v. Pawlenty, 781 N.W.2d 357, 363 (Minn.2010); see also Minn.Stat. § 645.16 (2014). “When the words of a statute in their application to an existing situation are clear and free from all ambiguity,” we must give effect to the plain meaning of the law. MinmStat. § 645.16; accord Am. Tower, L.P. v. City of Grant, 636 N.W.2d 309, 312 (Minn.2001). A statute is ambiguous if, as applied to the facts of the case, it is susceptible to more than one reasonable interpretation. Staab v. Diocese of St. Cloud, 813 N.W.2d 68, 72-73 (Minn.2012). If a statute is ambiguous, we may look beyond the statute’s text to ascertain the intent 'of the Legislature. See MinmStat'. § 645.16.
Minnesota Statutes § 290.17 (2014) describes what income must be allocated to the State of Minnesota for individual income tax purposes. The statute provides different rules for income allocation depending on the taxpayer’s residency. For a “resident,” all income is subject to Minnesota -income .tax. See MinmStat. § 290.17, subd. 1(a). For a nonresident and an “individual who is a resident for only part of a taxable year,” the amount of income allocated to. Minnesota depends on the type of income. See, e.g., Minn.Stat. § 290.17, subd. 2(a)(1) (allocating income from wages to Minnesota to the extent that the work of the employee was performed in Minnesota); Minn.Stat. § 290.17; subd. 1(c) (providing a formula for determining the amount of partnership, S corporation, trust, or estate income allocated' tó Minnesota for part-year residents). Though nonresident and part-year resident status is crucial'to the allocation rules under MinmStat. § 290.17, that statute does not define “nonresident” or an “individual who is a resident for only part of a taxable year,”
However, MinmStat. § 290.01, subd. 7, does provide two definitions' of the term “resident.” The statute provides, in relevant part:
(a) The term “resident” means any individual domiciled in Minnesota....
(b) “Resident” also means any individual domiciled outside the state who maintains a place of abode in the state and spends in the aggregate more than one-half of the tax year in Minnesota _
For purposes of this subdivision, presence within the state for any part of a calendar day constitutes a day spent in the state.
MinmStat. § 290.01, subd. 7. These definitions apply “for the purposes of [chapter 290,]” “[ujnless the language or context clearly indicates that a different meaning is intended.” Id., subd. 1[2]
*325 Subdivision 7, passed in 1987, does not squarely address how to determine the residency of individuals domiciled in Minnesota for only part of a year. In 1988 the Commissioner promulgated Minn. R. 8001.0300, subp. 8 (2015) (the Rule), which states that
persons domiciled outside Minnesota who move their domiciles to Minnesota during the tax year are part year residents of Minnesota. The physical presence test does not apply to such persons unless a Minnesota abode is maintained during the period domiciled, outside of Minnesota.
The Rule also provides examples of its application to different factual scenarios. One such example addresses an individual who spends part of the year .domiciled in the state and part of the year domiciled outside the state. The example clarifies that if an individual maintains an abode in Minnesota while domiciled- outside the state, all days the individual, spends in Minnesota that year — whether as a domiciliary or not — can be aggregated to determine whether the individual is a full-year resident. Minn. R. 8001.0300, subp. 10B.
III.
We begin our analysis by determining whether the plain language of the statute clearly and unambiguously requires a particular result in this case. Both the Markses and the Commissioner contend that the statute’s plain language requires us to adopt their respective interpretations. However, we conclude that the statute’s text is susceptible to two reasonable interpretations regarding whether an individual is a “resident” when that individual is domiciled both “in Minnesota” and “out-side the state” during .a given tax year. As a result, the statute is ambiguous.
One reasonable interpretation, advanced by the Markses and adopted by the tax court, is that the phrase “domiciled outside the state” limits the rest of subdivision 7(b) and requires that the individual fulfill the conditions of abode and-physical presence entirely during the portion of the year that the individual is domiciled outside Minnesota. Though the statute’s plain language requires the Commissioner to examine whether the individual in question “spends in the aggregate more, than one-half of the tax year in Minnesota,” under the Markses’ .reading that language serves only to indicate that the days spent in Minnesota as nondomiciliaries need not be consecutive to count as days spent .in the state. Thus, under this reasonable reading, an individual., whose domicile changes during a tax year is only a “resident” for the full year if that individual both maintains an abode in the state and spends at least ■ 183 days-' in- Minnesota while domiciled in another state.
But the Commissioner’s interpretation is also reasonable. ‘ The Commissioner argues that when an individual is domiciled both inside and outside Minnesota in a single tax year, subdivision 7(b) contemplates. that the Commissioner will count all the days the individual is.present in the state during, that year to determine whether that person is a “resident.” Under this interpretation, the phrase “domiciled, outside the state” does not limit the time periods that may be examined to determine whether the abode and physical presence conditions are fulfilled during the tax year, but rather provides that individuals may be taxed as residents for portions of the. year that they were not domiciled in *326 Minnesota if during the tax year they maintained the substantial contacts with the state that subdivision 7(b) requires: abode and physical presence for more than half the year. As a result, under the Commissioner’s interpretation, the definition of “resident” applies to all individuals who fulfill three conditions during the tax year: domicile outside Minnesota, maintenance of an abode in Minnesota, and physical presence in Minnesota for more than half the' tax year. This reading of the statute is further supported by the subdivision’s unqualified statement that “[f]or purposes of this subdivision, presence within the state for any part of a calendar dáy constitutes a day' spent in the state.” Minn.Stat. § 290.01, 'subd. 7. Neither that provision nor subdivision 7(b)’s “resident” definition'itself states that-days spent in Minnesota must be spent as nondomiciliar-ies to be counted.
Because both the interpretations prof-erred by the Markses and by the Commissioner are reasonable interpretations of the statute, we conclude that the text of subdivision 7(b) is ambiguous.
The dissent, though, sees no ambiguity whatsoever, arguing that subdivision 7(b) can only be read such that all three requirements — domicile outside Minnesota, abode, and physical presence — must be “satisfied simultaneously,” not just within the tax year, but on a day-by-day basis. We cannot share the dissent’s certitude; subdivision '7(b) is just not that clear. While subdivision 7(b) requires that all three requirements be met within the tax year in question, it lacks further temporal precision. For example, thé statute does not specify the minimum time period for maintaining “a place of abode in the state,” Nor does the statute describe whether the time of non-domiciliary. status and the time of abode maintenance must be congruent. Thus, there is temporal ambiguity between and among the requirements.
To be sure, the dissent’s theory that the three requirements each run day-by-day with one another would be stronger if the Legislature had drafted the statute to read: “any individual domiciled outside the state who, during that time, maintains a place of abode and ... ”, or “who as a non-domiciliary maintains a place of abode and '... ” But the statute says neither of these things. And we do not have the authority to fill in those words. See Wallace v. Comm’r of Taxation, 289 Minn. 220, 230, 184 N.W.2d 588, 593-94 (1971).
IV.
Because the statute is susceptible to two reasonable interpretations, we must look beyond the text to determine legislative intent. The Legislature has provided a list of factors to consider and presumptions to apply when ascertaining legislative intent. MinmStat. § 645.16-.17 (2014). Two are dispositive here.
First,, we may look to the purpose of the law. BCBSM, Inc. v. Comm’r of Revenue, 663 N.W.2d 531, 533 (Minn.2003); see also Minn.Stat. § 645.16(1), (4) (directing courts to ascertain legislative intent by examining “the occasion and necessity for the law” and “the object to be attained” by the law). Income taxes are founded upon an individual’s obligation to contribute to the costs associated with the services, benefit's, and protections provided by government. Luther v. Comm’r of Revenue, 588 N.W.2d .502, 509 (Minn.1999) (citing Maguire v. Trefry, 253 U.S. 12, 14, 40 S.Ct. 417, 64 L.Ed. 739 (1920)). That is why Minnesota’s income tax regime is meant to tax individuals and entities that have significant contacts with the state. See id.; see also, e.g., Minn.Stat. § 290.17, subd. 2 (taxing wages, even of nonresi *327 dents, if their work was performed in Minnesota).
Subdivision 7(b) in particular serves the purpose of requiring individuals who avail themselves of Minnesota’s services, benefits, and protections through substantial contact with the state for most of the year to pay taxes on their entire income. The Markses, who spent 70 percent of the year in Minnesota in an abode they owned here, enjoyed those services, benefits, and protections as much as or more than any non-domiciliary who spent 51 percent of the year in Minnesota.
Second, in ascertaining legislative intent, we consider administrative interpretations of the statute. MinmStat. § 645.16(8). Administrative agencies may adopt regulations to implement or make specific the language of a statute, Billion v. Comm’r of Revenue, 827 N.W.2d 773, 781 (Minn.2013), and the Commissioner’s rules implementing tax statutes have the force of law, Minn.Stat. § 270C.06 (2014). The Commissioner’s interpretation of income tax statutes is entitled to deference, see Benda v. Girard, 592 N.W.2d 452, 455 (Minn.1999), and we give great weight to longstanding agency interpretations of statutes the agency is charged with administering, see Greene v. Comm’r of Minn. Dept. of Human Servs., 755 N.W.2d 713, 722 (Minn.2008); U.S. W. Material Res., Inc. v. Comm’r of Revenue, 511 N.W.2d 17, 20-21 & n. 2 (Minn.1994).
As already noted, the statutes the Commissioner is tasked with implementing are ambiguous as to whether an individual is a “resident for only part of a taxable year” when the individual is domiciled both inside and outside Minnesota during a single tax year. The Commissioner’s Rule, however, clarifies that topic. The Rule provides that individuals who change their domicile to Minnesota during a tax year are typically part-year residents of the state. Minn. R. 8001.0300, subp. 8. However, the Rule also specifically provides that the definition of “resident” in subdivision 7(b) applies to such persons if they maintain an abode in Minnesota during the period they are not domiciled here. Id.
Further, the example in the Rule’s sub-part 10B demonstrates that, if the Rule is •applied to the Markses, they were full-year residents. In the example, “T” is domiciled and physically present in Minnesota from January 1 until September 1 (more than 183 days). Id., subp. 10B. “T” then changes domicile to another state, but continues to maintain an abode in Minnesota. Id. The Rule explains that “T” is subject to subdivision 7(b) and therefore is a full-year Minnesota resident for the- tax year in question. See id. The factual scenario in the example, does differ slightly from that of the Markses in that “T” changes domicile from Minnesota mid-year whereas the Markses changed theirs to Minnesota midyear. However, the logic of the example clearly and directly applies to the Marks-es; under the Rule, both “T” and the Markses are full-year residents even though days spent in Minnesota as a domiciliary must be counted for subdivision 7(b)’s definition to apply to them. .
The Markses argue that an administrative rule cannot conflict with the corresponding statute. Of course, we agree. See Billion, 827 N.W.2d at 781. But this Rule does not. It is consistent with, and clarifies, the Commissioner’s reasonable interpretation of subdivision 7(b). Because the Rule addresses a topic on which the statute is ambiguous, it does not conflict with the statute and is entitled to deference. Further, the Rule was promulgated in 1988, immediately following the 1987 adoption of the relevant language in Minn.Stat. § 290.01, subd. 7. In the 27 years since the Rule’s promulgation, the Legislature has not amended the statute to *328 overturn or alter the Rule. As a reasonable and longstanding, interpretation of the statute, the Rule should be given considerable weight as we ascertain legislative intent.
The Markses also argue that, if the statute is ambiguous, wé must necessarily resolve , the ambiguity in their favor because they are taxpayers. But their approach would require us to bypass a necessary step in statutory construction. When the language of a statute is ambiguous the Legislature has given us statutory canons to ascertain and effectuate its intent. See Minn.Stat. § 645.16. We "consider among other matters: the purpose of the law, the circumstances of its enactment, and the mischief the law was meant to remedy.” ' BCBSM, Inc., 663 N.W.2d at 533. When, after such consideration, we are still unable to ascertain legislative intent, we resolve the ambiguity in favor Of the taxpayer. See id. at 534. This principle of construction rests on the premise that wte lack authority to extend the scope of a tax-levying statute beyond the clear meaning of the statute. See Northland Country Club v. Comm’r of Taxation, 308 Minn. 265, 267, 241 N.W.2d 806, 807 (1976) (quoting Charles W. Sexton Co. v. Hatfield, 263 Minn. 187, 195, 116 N.W.2d 574, 580 (1962)).
In this case,' after applying the statutory canons, the-intent of the Legislature is not in doubt. Therefore, we have no occasion to apply the principle of construction specific to tax cases.
V.
 In sum, we conclude’ that there are two reasonable ways to read Minn. Stat. § 290.01, subd. 7, to determine whether an individual is a “resident” when that individual is both “domiciled in Minnesota” and “domiciled outside the state” ■during a given-tax year. The statute is therefore ambiguous. Because we conclude that we can ascertain the intent of the Legislature by considering the statute’s purpose and a longstanding agency interpretation that is entitled to deference, we hold that the statute allows the Commissioner to count all the days a taxpayer is physically present in Minnesota t.o der termine whether the taxpayer is a “resident” as defined -in Minn.Stat. § 290.01, subd. 7(b), including days, spent in the state as a .domiciliary. Accordingly, we reverse and remand to the tax court for a recalculation of the Markses’ tax debt in accordance with this opinion.
Reversed and remanded.

. The parties stipulated that Curtis Marks spent more than 183 days in the state, 104 of which were prior to re-establishing domicile.

. The dissent asserts that the statute creates "two types of residents”: “domiciled residents] ” and "non-domiciled resident[s].” But there are not "types” of residents in the law; instead, there are two definitions applicable to determine whether an individual is a "resident.” Nor does the applicable statute use the term "part-year residents"; instead, it employs the phrase “resident for only part of a taxable year.” Minn.Stat. § 290.17, subd. *325 lie). For the purposes of income allocation, the statute does not require the Commissioner to determine if a person is a ‘.‘part-year resident,” but rather, whether that person was a “resident” for the entire tax year or for "only part of a taxable year.” Id.