ANALYSIS
The state contends that the district court's interpretation of Minnesota Statutes section 609.349 is erroneous and that the plain language of the statute excuses Gosewisch from criminal liability only if he is married to the alleged victim at the time of the offense, unless the couple is legally separated. Gosewisch also argues that the statute is unambiguous, but reaches the opposite result: the legal spouse provision excuses criminal sexual conduct if the defendant and victim marry at any time before the trial because the statutory provision is silent on when the marriage must occur.
To resolve this dispute, we first consider whether the alleged district court error has a critical impact on the trial outcome. We then turn to interpret the statute itself. This question of statutory interpretation is a question of law, subject to de novo review. State v. Riggs , 865 N.W.2d 679, 682 (Minn. 2015). Because we conclude, given the two reasonable interpretations of the provision, that the statute is ambiguous, we move to apply the tools of statutory construction. Through application of these tools, we conclude that there is only one reasonable construction: the protections accorded a legal spouse in section 609.349 apply only if the actor is married to the victim at the time of the alleged offense , unless the couple is legally separated.
But we begin with an examination of critical impact. We only reach the issue of statutory interpretation in a pretrial appeal from the state if the alleged district court error has a critical impact on the trial outcome. State v. Underdahl , 767 N.W.2d 677, 681 (Minn. 2009) ; see Minn. R. Crim. P. 28.04, subd. 2(2). Here, the state met that threshold showing because "[d]ismissal of a complaint satisfies the critical impact requirement." State v. Trei , 624 N.W.2d 595, 597 (Minn. App. 2001), review dismissed (Minn. June 22, 2001).
We next turn to the statute itself. In its entirety, Minnesota Statutes section 609.349 states:
A person does not commit criminal sexual conduct under sections 609.342, clauses (a) and (b), 609.343, clauses (a) and (b), 609.344, clauses (a), (b), (d), (e), and *799 (n), and 609.345, clauses (a), (b), (d), (e), and (n),[4] if the actor and complainant were adults cohabiting in an ongoing voluntary sexual relationship at the time of the alleged offense, or if the complainant is the actor's legal spouse , unless the couple is living apart and one of them has filed for legal separation or dissolution of the marriage. Nothing in this section shall be construed to prohibit or restrain the prosecution for any other offense committed by one legal spouse against the other.
(Emphasis added.)
The key question before us is when to determine whether a couple "is" married for purposes of section 609.349. The plain language of the statute controls when the meaning is unambiguous, and we first consider whether that is the case. Lapenotiere v. State , 916 N.W.2d 351, 357 (Minn. 2018). Here, both parties contend that the statute's plain language supports their interpretation. And both of their interpretations are reasonable. As Gosewisch points out, the statute explicitly provides that for cohabiting adults in a voluntary sexual relationship, an actor does not commit criminal sexual conduct with a vulnerable adult if they are cohabitating "at the time of the alleged offense." That explicit temporal directive is missing from the provision exempting an actor from prosecution for criminal sexual conduct with a vulnerable adult who is the actor's spouse. But, as the state contends, it is reasonable to read the initial wording of the statute ("A person does not commit...." (emphasis added) ) to impose a present tense reading of the balance of the statute. In that situation, an actor does not commit criminal sexual conduct at the time of the offense if the actor is married to the victim.
Because there are two reasonable interpretations of the statute, we conclude that it is ambiguous. This determination is bolstered by the lack of a temporal qualifier for the legal-spouse exemption in the statute. In this regard, Marks v. Comm'r of Revenue is instructive. 875 N.W.2d 321 (Minn. 2016). There, the supreme court evaluated an income-allocation statute for tax purposes, determined that it was subject to two reasonable interpretations because of a lack of "temporal precision" among its provisions, and ruled that the resulting ambiguity permitted the court to ascertain legislative intent to resolve the ambiguity. Id . at 326. The lack of a temporal qualifier in the legal-spouse provision of section 609.349 creates a similar "temporal ambiguity." Id .
When a statute is ambiguous, we look beyond the plain language of the statute to determine legislative intent. Minn. Stat. § 645.16 (2018). In doing so, we may apply the canons of statutory construction to discern the statute's meaning. State v. Nelson , 842 N.W.2d 433, 436 (Minn. 2014).
*800 In this effort, we first look at language of the entire statute to determine whether it may be harmonized to clarify the ambiguity. We also examine the purpose of the statute, consider its language in light of other crimes defined in the criminal code, and consider the consequences of other interpretations.
First, with regard to the statutory language itself, the relevant language provides that "[a] person does not commit criminal sexual conduct ... if the complainant is the actor's legal spouse." Minn. Stat. § 609.349. Accordingly, we must determine whether an actor's marriage excuses criminal sexual conduct if the actor "is" married at the time of the alleged criminal sexual conduct or at any time before trial. In doing so, we must discern whether the initial portion of the statute, referring to the present tense, can be reconciled with the temporal qualifier applied to cohabitating couples. See Septran, Inc. v. Indep. Sch. Dist. No. 271 , 555 N.W.2d 915, 919 (Minn. App. 1996) (recognizing well-established rule of statutory construction that requires harmonizing apparently conflicting statutory provisions), review denied (Minn. Feb. 26, 1997).
The beginning portion of the statute answers the question of when one "is" married. Minnesota Statutes section 609.349 starts with "[a] person does not commit criminal sexual conduct ... if," which focuses on the conduct of the actor at the exact time it occurs. That focus applies to all of the exemptions that follow the statement, including when a complainant "is" the actor's spouse. As a result, whether a victim "is married" should be determined at the time of the offense. The fact that the provision protecting certain cohabiting couples from criminal sexual conduct includes an additional temporal qualifier does not change this analysis. Cohabitation is generally a more fluid state than the relatively constant state of marriage, and the differences in permanency underlying these two statuses explain the different statutory wording applied to them. Construing the provisions in harmony with each other, as we are directed to do, leads us to the conclusion that the "at the time of the offense" language that specifically applies to cohabiting couples is necessary in light of the more impermanent nature of cohabitation and a similar reference is unnecessary with regard to married couples.
Second, support for this construction is garnered by the statute's obvious purpose to protect vulnerable adults. See Minn. Stat. § 645.16(1) (permitting consideration of the "occasion and necessity for the law" in interpreting a statute). It is the public policy of this state to protect vulnerable adults. Minn. Stat. § 626.557, subd. 1 (2018). Section 609.349 is designed to protect vulnerable persons while upholding their constitutional right to marry whom they choose.[5] See State v. Perez , 779 N.W.2d 105, 110 (Minn. App. 2010) (recognizing that the statute "creat[es] [an] exception to some criminal-sexual-conduct offenses if [the] complainant is [the] actor's legal spouse and [the] couple is not in [the] process of separation or divorce"), review denied (Minn. June 15, 2010). Extending the statutory exemption to an actor who marries a vulnerable adult before trial *801 could permit or even encourage an actor to marry in order to avoid culpability for criminal conduct, re-victimizing the alleged victim. Here, Gosewisch married G.H. two years after the first alleged offense and only six weeks before the scheduled trial.
Third, reading section 609.349 in light of the balance of the criminal code reinforces our conclusion that the legal-spouse exemption is determined at the time of the alleged offense, so that an actor is not excused by an after-the-fact marriage to a victim. See Am. Family Ins. Grp. v. Schroedl , 616 N.W.2d 273, 278 (Minn. 2000) (directing courts to "construe a statute as a whole and ... interpret each section in light of the surrounding sections to avoid conflicting interpretations"). The criminal code nearly always defines crimes with reference to prohibited conduct by the actor that occurs at a specific time, and that is the time of the alleged offense. For example, criminal sexual conduct crimes are defined with reference to an actor who "engages" in sexual acts with another person. See Minn. Stat. §§ 609.342, .343, .344, .345, .3451 (2016). Murder offenses are defined with reference to an actor who "does" a specific act that causes the death of another person. See Minn. Stat. §§ 609.185, .19, .20 (2016). And assault offenses are defined with reference to an actor's "assault" of another person. See Minn. Stat. §§ 609.221, .222, .223 (2016).
Possible exceptions include the offenses of misdemeanor failure to possess proof of insurance to drive a vehicle under Minnesota Statutes section 169.791, subd. 2 (2016), which prohibits a conviction for the offense if a vehicle owner later produces timely proof of insurance, Minn. Stat. § 169.791, subd. 2a (2016), and driving while impaired under Minn. Stat. § 169A.20, subd. 1(5) (2016), which defines the offense to include measurement of the person's alcohol concentration "within two hours of the time, of driving, operating, or being in physical control of [a] motor vehicle." But even those offenses are defined with reference to principal conduct that occurs at the time of the offense. It would therefore be anomalous here to consider the actor's marital status at any time other than the time of the offense.
And finally, we consider the consequences of Gosewisch's interpretation of when an actor "is" married to an alleged victim. Minn. Stat. § 645.16(6) (permitting consideration of the consequences of a particular interpretation). Not only, as discussed above, would an after-the-fact marriage allow for re-victimization of a vulnerable adult, it could lead to other troubling applications of the statute. As the state points out, an actor could marry the complainant before trial, resulting in dismissal of criminal charges, and later divorce the complainant, leaving the state in a quandary about whether to recharge the actor. Encouraging this sort of gamesmanship with respect to a statute intended to protect vulnerable adults could not have been what the legislature had in mind when drafting it. Id .
For all of these reasons, we conclude that the ambiguity in Minnesota Statutes section 609.349 is resolved by harmonizing the entire text of the statute and giving effect to the legislature's intent. The legal-spouse provision must be interpreted to excuse Gosewisch's alleged criminal conduct only if he was married to G.H. at the time of the offense.[6] Because Gosewisch married G.H. after the alleged criminal conduct occurred, the legal-spouse provision does not excuse his conduct.
DECISION
Given its language, its purpose, and its placement among other statutes in the *802 criminal code, the provision of Minnesota Statutes section 609.349 that excuses the actor's criminal sexual conduct if the actor is married to the complainant applies only when the complainant "is the actor's legal spouse" at the time of the offense. We therefore reverse the district court's pretrial dismissal of charges against Gosewisch.
Reversed and remanded.
Dissenting, Smith, John, Judge*

Clauses (a) and (b) of Minnesota Statutes sections 609.342 and 609.343 (2016), defining first- and second-degree criminal sexual conduct, prohibit certain sexual acts when "the complainant is under 13 years of age and the actor ... more than 36 months older" or "the complainant is at least 13 years of age but less than 16 years of age and the actor is more than 48 months older than the complainant and in a position of authority over the complainant." Clauses (a), (b), (d), (e), and (n) of Minnesota Statutes sections 609.344 and 609.345 (2016), defining third- and fourth-degree criminal sexual conduct, also likewise prohibit sexual conduct involving designated ages of minor complainants and adult actors, sexual conduct between actors who provide special transportation services and a complainant who uses those services either during or immediately before or after transportation, and certain conduct when "the actor knows or has reason to know that the complainant is mentally impaired, mentally incapacitated, or physically helpless." Minn. Stat. §§ 609.344, subd. 1(d), .345, subd. 1(d).

The right to marry is a fundamental civil right. Loving v. Virginia , 388 U.S. 1, 12, 87 S.Ct. 1817, 1824, 18 L.Ed.2d 1010 (1967). But that right is subject to reasonable state regulation, In re Guardianship of O'Brien , 847 N.W.2d 710, 714 (Minn. App. 2014), which may include the restriction of an incapacitated person's right to marry. See Minn. Stat. § 524.5-314(c)(6) (2018) (permitting a guardian "the duty and power to exercise supervisory authority over the ward in a manner which limits civil rights ... only to the extent necessary").

Because of this disposition, we decline to address the state's other argument on appeal.

Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.