# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A25-1075

Ashley Anderson,
Appellant,

vs.

Adam Aaron Anderson, et al.,
Respondents.

**Filed April 27, 2026**
**Affirmed**
**Harris, Judge**

Stearns County District Court
File No. 73-CV-24-9839

Michelle K. Olsen, Joseph C. Tourand, Tentinger Law Office, P.A., Apple Valley, Minnesota (for appellant)

John G. Westrick, Samuel A. Savage, Savage Westrick, PLLP, Bloomington, Minnesota (for respondents)

Keith Ellison, Attorney General, Madeleine DeMeules, Assistant Attorney General, St. Paul, Minnesota (for intervenor attorney general)

Considered and decided by Reyes, Presiding Judge; Harris, Judge; and Jesson, Judge.*

## SYLLABUS

A statement in a report to a state licensing board that initiates an investigation constitutes a "communication in a . . . governmental proceeding" within the meaning of the Minnesota Uniform Public Expression Protection Act (UPEPA), Minnesota Statutes

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

section 554.08(b)(1) (2024), such that claims based on the statement may be subject to a special motion for expedited relief under UPEPA.

## OPINION

**HARRIS**, Judge

Appellant challenges a district court order granting respondents' special motion for expedited relief under UPEPA, Minnesota Statutes sections 554.07-.20 (2024), and a district court order denying appellant's motion for post-judgment relief under Minnesota Rule of Civil Procedure 60.02. First, we conclude that the district court properly granted respondents' special motion for expedited relief under UPEPA because: (1) respondents' alleged defamatory statements set forth in a report to the Minnesota Board of Social Work constitutes a communication in a governmental proceeding, (2) appellant failed to establish the applicability of any UPEPA exception, and (3) appellant failed to establish a prima facie case as to each essential element of her defamation claims. Second, we conclude that UPEPA is constitutional as applied by the district court here because the district court did not make factual findings or place an excessive burden on appellant as the nonmovant to defeat respondents' special motion for expedited relief. Finally, we conclude that the district court did not abuse its discretion in denying appellant's motion for post-judgment relief because a party may not invoke rule 60.02 to correct an alleged misapplication of the law. On these grounds, we affirm.

## FACTS

The following facts derive from the record before the district court on respondents' special motion for expedited relief and are presented in the light most favorable to appellant

2

as the nonmoving party.  *See J&D Dental v. Hou*, 26 N.W.3d 491, 494 n.1 (Minn. App. 2025); *Paragon Restorations, LLC v. Robinet Prods., LLC*, 31 N.W.3d 218, 220 (Minn. App. 2025), *rev. granted* (Minn. Mar. 25, 2026).

Appellant Ashley Anderson[1] is a licensed clinical social worker who has been employed by the Central Minnesota Health Center in St. Cloud since 2013.  Respondents Adam Anderson, Arica Anderson, and Austin Anderson are Ashley's siblings.  Austin has a history of mental-health issues and substance abuse, and disputes over Austin's care and guardianship have caused tension between Ashley and respondents.  On September 16, 2024, the St. Cloud police arrested Austin on outstanding warrants and detained him at the Stearns County Jail.  At the request of the parties' mother, Ann Anderson, Ashley called the jail to inform its medical staff about Austin's health complications stemming from his Type I diabetes.  Ashley conducted the call on speakerphone in the presence of Ann and Adam and did not mention her social work qualifications.

On October 1, 2024, Ashley received formal notice from the Minnesota Board of Social Work (the board) informing her that the board had initiated an investigation for professional misconduct based on allegations made via the board's online public complaint registration form (the report).  Ashley later learned that Adam had submitted the report to the board.  Adam had checked boxes on the form indicating that he was a "licensed health professional," "licensed social worker," and "insurer."  The report stated:

---

[1] Because all parties share the same last name, we refer to the parties by first name individually or by party designation collectively.

On Monday, September 16th, 2024, our [brother] was arrested in St. Cloud, MN, on a misdemeanor warrant through Benton County, MN.  We know this information was not made public before his arrest and our brother did not know there was an active warrant.  Ashley claims that our brother also has a warrant through Stearns County that we cannot see on the Stearns County Active Warrant List.  We do know that Ashley is employed by not only the above agency but also Stearns County jail in some capacity working nights a couple of times a week.[2]  During his stay in jail, our brother filed a Motion of Discovery during his stay in Benton County jail and it was discovered that the location that the call was placed matched the location where Ashley and a coworker of hers had been watching him meet with other family members.  The phone number used to call in the warrant matches the work phone number she utilizes.  *Due to the warrant information not being public prior to his arrest, the concern lies with Ashley Anderson obtaining this information illegally, using her position at the jail to gain this access.  Other records accessed were police reports and an investigation summary that is not available to the public.  The pictures attached will show the information that was accessed by a program not accessible to the public.*

In the past, *Ashley has also used her position to gain access to other confidential information regarding health records of our brother.*  Due to paperwork filed in Benton County, MN, our brother was deemed a vulnerable adult in need of a guardian to assist him in making decisions and taking care of his medical needs.  Upon helping our brother electronically file the necessary paperwork for health insurance, Ashley utilized another social work contact named "Cass" in Crow Wing County to push the paperwork through the waiting queue to get him approved more quickly.  *Ashley has used other questionable means to obtain protected health information regarding immediate family members including impersonating her mother on the phone with medical and county entities (mother was listed as legal guardian at the time).  She has often [sic] to other family members, including the guardian of our brother, that "we need to accept her professional opinion" in regard to treatment and resources.*  In the years leading up to

---

[2] In her affidavit, Ashley claims she never worked for the Stearns County Jail.

this, Ashley has not advised our brother to seek mental health treatment and often demonized him for not taking care of his diabetes, when it appears that there is an underlying cause for this. Ashley's "professional opinion" ethically cannot be applied due to the social worker code of conduct and also her employer's work policies. This is a conflict of interest and abuse of her power as a social worker. I'm concerned that if this is happening to my brother, that this may be happening to the clients she serves, past and present. (Emphasis added.)

Ashley brought claims for defamation, defamation per se, and civil conspiracy against respondents based on the italicized statements above.[3] Respondents moved the district court to dismiss the complaint with prejudice under: (1) Minnesota Rules of Civil Procedure 12.02(e) and 12.03, (2) UPEPA, and (3) Minnesota Statutes section 148E.285, subdivision 3 (2024). Respondents also moved for costs, disbursements, and attorney fees pursuant to UPEPA. *See* Minn. Stat. § 554.16. The district court granted respondents' motion to dismiss Ashley's claims with prejudice and ordered respondents to submit an affidavit for attorney fees incurred in association with the UPEPA claim.

The district court concluded that respondents' speech was protected under UPEPA because: (1) the report was a communication in a governmental proceeding and was on a matter of public concern, (2) Ashley failed to show that any exceptions to UPEPA applied, and (3) Ashley failed to establish a prima facie case sufficient to defeat a summary-judgment motion as to each essential element of her defamation claims.[4] The district court

---

[3] Ashley brought her defamation and defamation per se claims solely against Adam and brought the civil-conspiracy claim against all respondents.

[4] We recognize that, at the time of the district court's order, there was no Minnesota case law interpreting or applying UPEPA.

further concluded that, even if UPEPA did not bar Ashley's defamation claims, respondents were statutorily immune under Minnesota Statutes section 148E.285, subdivision 3. *See* Minn. Stat. § 148E.285, subd. 3 ("An individual . . . is immune from civil liability . . . for submitting in good faith a report under subdivision 1 or 2 or for otherwise reporting, providing information, or testifying about violations or alleged violations of this chapter.").

Ashley subsequently moved to vacate the district court's order pursuant to rule 60.02(a) of the Minnesota Rules of Civil Procedure, asserting that the district court erred in its application of UPEPA. In her rule 60.02 motion, Ashley argued for the first time that UPEPA, as applied by the district court, violated her constitutional right to a jury trial as established by *Leiendecker v. Asian Women United of Minn.*, 895 N.W.2d 623 (Minn. 2017). The district court's order declined to address Ashley's rule 60.02 motion because it found that the motion was, "in actuality, a motion to reconsider," and raised arguments that should be made on appeal to this court.

Ashley appealed, arguing that the district court erred in granting respondents' special motion for expedited relief and erred in declining to address Ashley's rule 60.02 motion.[5] That same day, Ashley provided notice of her constitutional challenge to UPEPA to the Minnesota Attorney General's Office pursuant to rule 144 of the Minnesota Rules

---

[5] The district court issued an order for attorney fees on April 21 but did not enter judgment on the order. Following Ashley's appeal, we requested informal memoranda on the issue of attorney fees and dismissed "[t]he part of [Ashley's] appeal seeking review of the April 21, 2025 order awarding respondents' attorney fees . . . as premature." The issue of attorney fees is not before this court.

6

of Civil Appellate Procedure. On July 31, 2025, the attorney general's office moved to intervene to defend the constitutionality of UPEPA, which this court granted.

## ISSUES

I. Did the district court err in granting respondents' special motion for expedited relief under UPEPA?

II. Is UPEPA unconstitutional as applied to Ashley?

III. Did the district court err in denying Ashley's post-judgment motion?

## ANALYSIS

**I. The district court did not err in granting respondents' special motion for expedited relief under UPEPA.[6]**

Before addressing Ashley's specific arguments challenging the district court's order granting respondents' special motion for expedited relief under UPEPA, we briefly describe the pertinent legal framework.

The Minnesota Legislature adopted UPEPA, a uniform anti-SLAPP (strategic lawsuit against public participation) statute, in 2024.[7] 2024 Minn. Laws ch. 123, art. 18, § 16, at 2412-17. Under UPEPA, a party may file a special motion for expedited relief to dismiss the cause of action within 60 days of the date the party is served with the complaint.

---

[6] Ashley also argues, in the alternative, that the district court erred in concluding that, even if UPEPA does not apply, respondents "enjoy statutory immunity under Minnesota Statutes section 148E.285." That provision is in Chapter 148E—the Minnesota Board of Social Work Practice Act—which regulates the profession of social work. Based upon our decision to affirm on the ground that the district court did not err in granting respondents' motion for expedited relief under UPEPA, we need not address this argument.

[7] In adopting UPEPA, the legislature repealed Minnesota's previous anti-SLAPP statute, Minnesota Statutes sections 554.01-.06 (2022), which the supreme court ruled unconstitutional as applied to tort claims in *Leiendecker*, 895 N.W.2d at 638.

Minn. Stat. § 554.09.  If the moving party prevails on the motion, "the court shall award court costs, reasonable attorney fees, and reasonable litigation expenses related to the motion."  Minn. Stat. § 554.16.

We review a district court's decision on a special motion for expedited relief de novo.  *J&D Dental*, 26 N.W.3d at 496.  Courts use a three-part analysis to assess special motions for expedited relief:

> First, a district court must determine whether UPEPA applies to the action at issue.  Minn. Stat. § 554.13(a)(1)-(2).  Second, a district court must determine whether the nonmoving party has established a prima facie case for each essential element of the challenged causes of action.  *Id.* (a)(3)(i).  And third, a district court must determine whether the moving party has demonstrated a basis for dismissal either for failure to state a claim or because there are no genuine issues of material fact and judgment is appropriate as a matter of law.  *Id.* (a)(3)(ii).

*Id.* at 496.  We review each phase in turn.

### A.    Part One

We must first determine whether UPEPA applies in this case.  *See* Minn. Stat. § 554.13(a)(1)-(2).   UPEPA applies if: (1) "the moving party establishes under section 554.08, paragraph (b), that sections 554.07 to 554.19 apply," and (2) "the responding party fails to establish under section 554.08, paragraph (c), that sections 554.07 to 554.19 do not apply[.]"  *Id.*  Minnesota Statutes section 554.08, paragraph (b) provides:

> (b) Except as otherwise provided in paragraph (c), sections 554.07 to 554.19 apply to a cause of action asserted in a civil action against a person based on the person's:
>> (1) communication in a legislative, executive, judicial, administrative, or other governmental proceeding;

8

(2) communication on an issue under consideration or review in a legislative, executive, judicial, administrative, or other governmental proceeding; or

(3) exercise of the right of freedom of speech or of the press, the right to assemble or petition, or the right of association, guaranteed by the United States Constitution or the Minnesota Constitution on a matter of public concern.

Minn. Stat. § 554.08(b).

The district court concluded that Adam's speech fell under UPEPA because it was a "communication in a . . . governmental proceeding" and was "speech on a matter of public concern." Minn. Stat. § 554.08(b)(1), (3). Ashley disputes both conclusions. Because we conclude that the district court did not err in determining that Adam's statements set forth in a report to the board was a "communication in a . . . governmental proceeding" under section 554.08(b)(1), such that claims based on the statements may be subject to a special motion for expedited relief under UPEPA, we need not address whether the district court erred in determining that Adam's speech was speech on a matter of public concern under section 554.08(b)(3).

### 1. Communication in a Governmental Proceeding

Ashley argues that the district court erred in determining that Adam's speech was a "communication in a . . . governmental proceeding" under section 554.08(b)(1). Ashley's argument requires us to interpret this phrase in UPEPA. This court reviews questions of statutory interpretation de novo. *Lee v. Lee*, 775 N.W.2d 631, 637 (Minn. 2009). The goal of statutory interpretation is to "ascertain and effectuate the intention of the Legislature." *Marks v. Comm'r of Revenue*, 875 N.W.2d 321, 324 (Minn. 2016). "[W]e give words and phrases their plain and ordinary meaning" and "read the statute as a whole and give effect

9

to all of its provisions." *Graphic Commc'ns Loc. 1B Health & Welfare Fund "A" v. CVS Caremark Corp.*, 850 N.W.2d 682, 689 (Minn. 2014). If the statute is clear, we enforce its plain meaning. *Id.* To determine a statute's plain meaning, we construe its "words and phrases according to the rules of grammar and their common and approved usage. *Jones v. Borchardt*, 775 N.W.2d 646, 647 (Minn. 2009); *see also* Minn. Stat. § 645.08(1) (2024). For the reasons set forth below, we conclude that the language of section 554.08(b)(1) is unambiguous.

Neither the Minnesota Statutes nor *Black's Law Dictionary* define "governmental proceeding." Therefore, the district court relied on *Black's Law Dictionary*'s definition of "communication" and Arizona's anti-SLAPP statute's definition of "governmental proceeding" in concluding that "[t]he complaint in this case was submitted to the Minnesota Board of Social Work via their social worker complaint procedure and qualifies as a communication in a governmental proceeding under section 554.08(b)." *See* Ariz. Rev. Stat. Ann. § 12-751(2) (2024) (defining "governmental proceeding" as a proceeding, other than a judicial proceeding, by an officer, official, or body of this state and any political subdivision of this state, including boards and commissions).

Ashley argues that the statements in Adam's report are not protected under section 554.08(b)(1) because they were part of a report that *initiated* a governmental proceeding (the board's investigation of Ashley's alleged misconduct) rather than being made during or "in" an already existing government proceeding. However, such an interpretation would render section 554.08(b)(2) superfluous. That section provides that claims based on any "communication on an issue *under consideration or review in a* legislative, executive,

10

judicial, administrative, or other *governmental proceeding*" are subject to UPEPA.  Minn. Stat. § 554.08(b)(2) (emphasis added).

We read and interpret statutes as a whole.  *Am. Fam. Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000).  "[W]e may consult dictionary definitions to determine a word's plain meaning."  *Mittelstaedt v. Henney*, 969 N.W.2d 634, 639 (Minn. 2022).  A "communication" is "[t]he interchange of messages or ideas by speech, writing, gestures, or conduct; the process of bringing an idea to another's perception."  *Black's Law Dictionary* 350 (12th ed. 2024).  As Adam's report to the board was a written message intended to bring an idea to the board's perception—that Ashley may be abusing her position as a licensed social worker—his report is a "communication."

"Governmental" is defined as "[o]f, relating to, or involving a government."  *Black's Law Dictionary* 836 (12th ed. 2024).  Because the board is a state agency, it satisfies the "governmental" requirement of "governmental proceeding."  *See* Minn. Stat. § 14.02, subd. 2 (2024) (defining "agency" to mean "any state officer, board, commission, bureau, division, department, or tribunal, other than a judicial branch court and the Tax Court, having a statewide jurisdiction and authorized by law to make rules or to adjudicate contested cases"); Minn. Stat. § 148E.030 (2024) (providing that "[t]he board may adopt and enforce rules to carry out [its] duties," which include "taking disciplinary, adversarial, corrective, or other actions" when a social worker "violates the requirements of this chapter").  Further, the supreme court recently explained that

> *Black's Law Dictionary* provides an expansive definition of the word "proceeding," which encompasses all manner of business that comes before a court.  Proceedings can include "acts and

11

events" that make up a lawsuit, the "procedural means for seeking redress from a tribunal or agency," "[a]n act or step that is part of a larger action," or the business conducted by a court or other official body.

*In re Civ. Commitment of Swope*, 26 N.W.3d 275, 284 (Minn. 2025) (quoting *Black's Law Dictionary* 1459 (12th ed. 2024)).  Considering the "expansive" definition of "proceeding," we conclude that, on these facts, a report made to a state licensing board through the board's publicly available complaint form that initiates an investigation constitutes a "communication in a . . . governmental proceeding."  Minn. Stat. § 554.08(b)(1).

Additionally, under the canon against surplusage, which "we employ when determining whether a statute is ambiguous," we "avoid interpretations that would render a word or phrase superfluous, void, or insignificant."  *In re Civ. Commitment of Benson*, 12 N.W.3d 711, 716 (Minn. 2024) (quotation omitted).  Because section 554.08(b)(2) extends UPEPA to claims based on communications on issues "under consideration or review" in a "governmental proceeding," any interpretation of section 554.08(b)(1) requiring that a communication be made during an ongoing governmental proceeding would run afoul of the canon against surplusage.

Accordingly, the district court correctly determined that because Adam's speech was a "communication in a . . . governmental proceeding," UPEPA applied to Ashley's civil action based on that speech.

### 2. Ashley failed to show the applicability of a UPEPA exception.

If the moving party meets its burden of proving that UPEPA applies under section 554.08(b), the burden then shifts to the nonmoving party to establish that an exception

applies as provided in section 554.08(c). Minn. Stat. § 554.13(a)(2). Ashley contends that one of the statutory exceptions applies to the circumstances presented here. Specifically, she relies on Minn. Stat. § 554.08(c)(4), which provides that "[UPEPA] do[es] not apply to a cause of action . . . against a person named in a civil suit brought by a victim of a crime against a perpetrator." The district court concluded that this exception did not apply because Ashley failed to provide evidence that any of the respondents had been charged with or convicted of criminal defamation. On appeal, Ashley argues that the exception should apply regardless of whether respondents were charged with or convicted of criminal defamation because "she sufficiently pled the cause of action for civil defamation against respondents—which satisfies the burden of proof required in showing criminal defamation." We disagree with Ashley's contention.

Even adopting Ashley's interpretation of the exception, Ashley's argument fails because she does not assert that Adam knew his statements in the complaint were false. *See Halva v. Minn. State Colls. & Univs.*, 953 N.W.2d 496, 500 (Minn. 2021) (stating that a pleading is satisfactory if it provides "information sufficient to fairly notify the opposing party of the claim against it" (quotation omitted)). A person is guilty of criminal defamation if the person "orally, in writing or by any other means, communicate[] any false and defamatory matter to a third person without the consent of the person defamed" and have "knowledge of [the communication's] false and defamatory character." Minn. Stat. § 609.765, subd. 2 (2024). Ashley failed to allege that respondents knew of the report's false and defamatory character. Rather, her complaint contained mere conclusions that respondents acted with "malice," "ill will," "improper motives," and with "the intent of

13

defaming Ashley." *See Walsh v. U.S. Bank*, 851 N.W.2d 598, 603 (Minn. 2014) ("[W]e are not bound by legal conclusions stated in a complaint when determining whether the complaint survives a motion to dismiss." (quotation omitted)). We therefore conclude that Ashley failed to establish an applicable UPEPA exception.

In sum, the district court correctly determined that UPEPA applies to Ashley's claims. Adam's report to the board constitutes a "communication in a . . . governmental proceeding" within the meaning of Minn. Stat. § 554.08(b)(1). And because respondents met their burden of establishing UPEPA's applicability, the burden shifted to Ashley to demonstrate that a statutory exception applies. She failed to do so. Ashley did not adequately allege the elements of criminal defamation, as she did not assert that Adam knew his statements were false and defamatory. Accordingly, the district court did not err in concluding that UPEPA applied to Ashley's civil action.

### B.     Part Two

Because UPEPA applies, we must evaluate whether the nonmoving party, Ashley, established a prima facie case for each essential element of the challenged causes of action. *See* Minn. Stat. § 554.13(a)(3)(i).

As an initial matter, Ashley argues that at this stage, the district court erred in converting respondents' rule 12 motion to a summary-judgment motion. Ashley asserts that respondents' "rule 12 motion should not have been converted to [a] rule 56.03 [motion]" because the summary-judgment standard was "not appropriate for the procedural stage the parties were at" given that no discovery had occurred and because respondents' motion to dismiss was based on Minnesota Rule of Civil Procedure 12.02(e). The district

14

court determined that Ashley failed to "establish a prima facie cause of action, showing that the case 'would survive a motion for summary judgment.'" (quoting Taylor J. Anderson, *Survivors Speak Out: Analyzing Minnesota's ANTI-SLAAP Law Through the Lens of Johnson v. Freborg*, 51 Mitchell Hamline L. Rev. 252, 288 (2025) [hereinafter *Survivors Speak Out*].

When ruling on a motion for expedited relief, "the court shall consider the pleadings, the motion, any reply or response to the motion, and any evidence that could be considered in ruling on a motion for summary judgment under Minnesota Rules of Civil Procedure 56.03." Minn. Stat. § 554.12. Ashley had the ability to request more time to pursue discovery, but nothing in the record suggests that she exercised this ability. *See* Minn. Stat. § 554.10(d) (stating that upon the filing of a motion for expedited relief, "the court may allow limited discovery if a party shows that specific information is necessary to establish whether a party has satisfied or failed to satisfy a burden under section 554.13 paragraph (a), and the information is not reasonably available unless discovery is allowed"). Therefore, the district court's application of the summary-judgment standard was "appropriate for the procedural stage the parties were at" given that UPEPA incorporates the rule 56 standard and provides an avenue for expedited discovery. *See Cook v. Trimble*, 22 N.W.3d 196, 204 (Minn. App. 2025) ("UPEPA provides an accelerated procedure for obtaining rulings under standards articulated in Minn. R. Civ. P. 12.02(e) and 56."), *rev. granted* (Aug. 12, 2025).

"Under the common law, a plaintiff pursuing a defamation claim must prove that the defendant made: (a) a false and defamatory statement about the plaintiff; (b) in an

15

unprivileged publication to a third party; (c) that harmed the plaintiff's reputation in the community." *Maethner v. Someplace Safe, Inc.*, 929 N.W.2d 868, 873 (Minn. 2019) (quotation omitted). When such a statement concerns "a person's business, trade, or professional conduct," it is considered defamation per se, which does not require proof of actual damages. *Becker v. Alloy Hardfacing & Eng'g Co.*, 401 N.W.2d 655, 661 (Minn. 1987). "But a plaintiff must prove the remaining elements to succeed in a defamation action." *Bebo v. Delander*, 632 N.W.2d 732, 739 (Minn. App. 2001), *rev. denied* (Minn. Oct. 16, 2001). Minnesota courts have held that "a prima facie case simply means one that prevails in the absence of evidence invalidating it." *S. Minn. Beet Sugar Coop. v. County of Renville*, 737 N.W.2d 545, 558 (Minn. 2007) (quotation omitted).

The district court concluded that Ashley failed to make a prima facie showing sufficient to defeat a summary-judgment motion that Adam's statements "have tended to harm her reputation and lower her in the estimation of the community." Ashley argues that the allegations in her complaint, taken as true, were sufficient to establish a prima facie case on this essential element because she alleged that Adam's "false and defamatory statements about Ashley tended to harm, and have in fact harmed, Ashley's reputation in the estimation of the community." This conclusory statement, alone, is insufficient to establish a prima facie case as to the last element of a defamation claim. *See Bahr v. Capella Univ.*, 788 N.W.2d 76, 80 (Minn. 2010) ("A plaintiff must provide more than labels and conclusions."). Further, Ashley fails to explain how Adam's report, which Ashley acknowledges was privately submitted to the board, would impact public perception without the board taking disciplinary action against her, which the record

16

reflects has not occurred. Because Ashley failed to establish that Adam's speech had harmed her reputation in the community, the district court properly dismissed Ashley's complaint with prejudice under UPEPA. *See* Minn. Stat. § 554.13(a)(3)(i) (stating that the district court "shall dismiss with prejudice a cause of action" when "the responding party fails to establish a prima facie case as to each essential element of the cause of action").

Because we conclude that Ashley failed to establish a prima facie case for each essential element of her defamation claims,[8] we do not reach the third phase of the UPEPA analysis—whether respondents have demonstrated a basis for dismissal for failure to state a claim or because there are no genuine issues of material fact and summary judgment is appropriate as a matter of law. *See* Minn. Stat. § 554.13(a)(3)(ii).

## II.    UPEPA is constitutional as applied by the district court.

Ashley argues that Minnesota Statutes section 554.13(a)(1)-(2) is unconstitutional as applied to her because the district court created an unconstitutional burden shift that impedes her constitutional right to a jury trial. *See* Minn. Const. art. I, § 4. As an initial matter, we address the attorney general's argument that Ashley forfeited her constitutional challenge because she failed to raise it until her rule 60.02 motion, which the district court declined to consider. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) ("A reviewing court must generally consider only those issues that the record shows were presented and

---

[8] We conclude that the district court properly dismissed Ashley's civil-conspiracy claim against respondents as it is not supported by an underlying tort. Civil conspiracy is not an independent cause of action; rather, it is a derivative claim that must be supported by an underlying tort. *Harding v. Ohio Cas. Ins. Co.*, 41 N.W.2d 818, 825 (Minn. 1950). If the underlying tort claim fails, then the conspiracy claim necessarily fails as well. *Cf. D.A.B. v. Brown*, 570 N.W.2d 168, 172 (Minn. App. 1997).

considered by the [district] court in deciding the matter before it." (quotation omitted)). Ashley contends that she did attempt to raise her constitutional challenge but was denied due process when the district court summarily concluded that her rule 60.02 motion constituted an impermissible motion for reconsideration. She further asserts that, even if the constitutional challenge were deemed forfeited under *Thiele*, such forfeiture would apply only to a facial challenge, not to a challenge to the statute as applied to her case. For purposes of this analysis, we assume without deciding that Ashley's as-applied constitutional challenge was not forfeited.

The Minnesota Constitution establishes a categorical right to a jury trial for actions at law, stating that the "right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy." Minn. Const. art. I, § 4; *see Leiendecker*, 895 N.W.2d at 634. A law violates this right "if it renders the jury-trial right so burdened with conditions that it is not a jury trial" as guaranteed by the constitution. *Leiendecker*, 895 N.W.2d at 634 (quotation omitted). Ashley argues that the district court unduly burdened her constitutional right to a jury trial in holding that, once Adam demonstrated that UPEPA applies, the burden shifts to her as the nonmoving party to demonstrate the case has merit sufficient to survive a rule 56.03 motion for summary judgment.[9] Ashley contends that "this burden shift application has already been determined by the Minnesota Supreme Court [in *Leiendecker*] to unconstitutionally usurp the role of the jury by making pretrial factual findings."

---

[9] The district court relied on a recent law review article in adopting this burden-shifting analysis. *See Survivors Speak Out, supra*, at 288.

18

In *Leiendecker*, the Minnesota Supreme Court held that Minnesota's previous anti-SLAPP statute was unconstitutional because it "instruct[ed] district courts to usurp the role of the jury by making pretrial factual findings that c[ould] . . . result in the complete dismissal of the underlying action." *Id.* at 635. The supreme court explained that two clauses of the anti-SLAPP statute violated the responding party's constitutional right to a civil jury trial under article I, section 4 of the Minnesota Constitution because the clauses "transfer[red] the jury's fact-finding role to the district court" and "require[d] the responding party to meet a higher burden of proof before trial (clear and convincing evidence) than it would have to meet at trial (preponderance of the evidence)." *Id.* at 636. The supreme court reasoned that it was unconstitutional to impose such a heightened pleading standard and require a district court to "make a finding based on evidence, rather than assuming that the allegations are true." *Id.* (quotation omitted).

Contrary to Ashley's assertions, UPEPA does not suffer from the same infirmities as Minnesota's previous anti-SLAPP statute. Unlike Minnesota's previous anti-SLAPP statute, UPEPA does not require district courts to make factual findings. UPEPA merely "provides an accelerated procedure for obtaining rulings under standards articulated in Minn. R. Civ. P. 12.02(e) and 56." *Cook*, 22 N.W.3d at 204. District courts do not make factual findings at either the summary-judgment or motion-to-dismiss-for-failure-to-state-a-claim stages. *See Montemayor v. Sebright Prods., Inc.*, 898 N.W.2d 623, 628 (Minn. 2017) (stating that a court "must not weigh facts or determine the credibility of affidavits and other evidence" at the summary-judgment stage (quotation omitted)); *Abel v. Abbott Nw. Hosp.*, 947 N.W.2d 58, 68 (Minn. 2020) (stating that, when reviewing a case dismissed

for failure to state a claim upon which relief can be granted, we "must consider only the facts alleged in the complaint, accepting those facts as true and must construe all reasonable inferences in favor of the nonmoving party" (quotation omitted)).

Additionally, the UPEPA framework does not require the nonmoving party to meet a higher burden of proof before trial as it would have to meet at trial. *Cf. Leiendecker*, 895 N.W.2d at 636. UPEPA requires that the nonmoving party "establish a prima facie case as to each essential element of the cause of action" to survive the moving party's special motion for expedited relief. Minn. Stat. § 554.13(a)(3)(i); *see J&D Dental*, 26 N.W.3d at 496. While the district court may have indicated that Ashley, as the nonmoving party, must establish a prima facie case *sufficient to defeat a summary-judgment motion*, it did not violate Ashley's constitutional right to a jury trial because this requirement is incorporated into the standards for dismissals and summary judgments. *See Wallin v. Minn. Dep't of Corr.*, 598 N.W.2d 393, 406 (Minn. App. 1999) ("Because [appellant] was unable to establish a prima facie case as a matter of law, summary judgment was properly granted."), *rev. denied* (Minn. Oct. 21, 1999); *Rilley v. MoneyMutual, LLC*, 884 N.W.2d 321, 326 (Minn. 2016) ("When reviewing a motion to dismiss for lack of personal jurisdiction, we determine whether, taking all the factual allegations in the complaint and supporting affidavits as true, the plaintiff has made a prima facie showing of personal jurisdiction.").

We therefore conclude that UPEPA, as applied by the district court, is constitutional.[10]

---

[10] While not binding, we find *Davenport Extreme Pools & Spas, Inc. v. Mulflur*, 698 S.W.3d 140, 154 (Ky. Ct. App. 2024), persuasive in our constitutional analysis. *See Matter*

20

**III.    The district court did not err in denying Ashley's post-judgment motion because rule 60.02 does not provide relief from misapplication of the law.**

Ashley argues that the district court erred in dismissing her rule 60.02 motion for post-judgment relief and in reasoning that her motion was a motion for reconsideration. We review a district court's application of rule 60.02 for an abuse of discretion. *See Gams v. Houghton*, 884 N.W.2d 611, 619 (Minn. 2016).

A district court abuses its discretion when its findings are unsupported by the evidence in the record or if it misapplies the law. *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn. 1985). "Rule 60.02 can be utilized only if one of the grounds specified in the rule exists." *Carter v. Anderson*, 554 N.W.2d 110, 113 (Minn. App. 1996), *rev. denied* (Minn. Dec. 23, 1996). Ashley's rule 60.02 motion was predicated on the argument that the district court improperly applied UPEPA. But misapplication of the law is not one of the grounds

---

*of Tr. of Robert W. Moreland*, 993 N.W.2d 80, 85 (Minn. 2023) ("When interpreting a uniform law, we may consider other jurisdictions' interpretations of similar sections of their uniform . . . codes."); *State v. McClenton*, 781 N.W.2d 181, 191 (Minn. App. 2010) ("We recognize that although we are not bound to follow precedent from other states or federal courts, these authorities can be persuasive."), *rev. denied* (Minn. June 29, 2010). Kentucky, like Minnesota, has adopted a version of UPEPA. *Mulflur*, 698 S.W.3d at 150; *see also* Minn. Stat. § 554.18 ("In applying and construing [UPEPA], consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it."). In *Mulflur*, the Kentucky Court of Appeals reasoned that UPEPA's requirement that the nonmoving party must "establish a prima facie case as to each essential element" to survive a special motion for expedited relief is "already subsumed into the standards for dismissals and summary judgments" and therefore does not "alter[]" or "impair[]" vested rights. 698 S.W.3d at 152-53. The court explained that UPEPA merely "permits parties an accelerated procedure for using established, substantive defenses to dismiss non-meritorious claims" and provides "plaintiffs limited discovery to make *prima facie* showings of the elements of their claims." *Id.* at 154. Therefore, the court concluded that, because UPEPA does not abolish or restrict any preexisting rights of recovery, it does not violate Kentucky's jural rights doctrine. *Id.* at 162.

specified in rule 60.02. Therefore, Ashley could not appropriately bring a 60.02 motion to vacate a judgment based solely on the district court's improper application of the law.[11] *See Arzt v. Arzt*, 361 N.W.2d 135, 136 (Minn. App. 1985) ("Rule 60.02 is intended to correct mistake or inadvertence of a party, or to allow for newly discovered evidence . . . not to correct for judicial error."); *Carter*, 554 N.W.2d at 114 ("[I]t is doubtful that [r]ule 60.02 can be used as a substitute for appeal based on a perceived judicial error."). We therefore conclude that the district court did not abuse its discretion in denying Ashley's rule 60.02 motion for post-judgment relief.

## DECISION

A statement in a report to a state licensing board that initiates an investigation constitutes a "communication in a . . . governmental proceeding" within the meaning of Minnesota Statutes section 554.08(b)(1). Adam's statement in the report to the board therefore qualifies as such a communication. Because Ashley failed to establish a prima facie case for each essential element of her defamation claims, the district court did not err in dismissing her complaint with prejudice under UPEPA. Accordingly, we affirm the judgment in favor of respondents.

**Affirmed.**

---

[11] Ashley cites *Nordeen v. Comm'r of Pub. Safety*, 382 N.W.2d 256 (Minn. App. 1986), in support of her argument that district courts may use rule 60.02 motions to correct judicial error. But *Nordeen* involved "the unique situation in which a district court corrected its original decision based on the supreme court's intervening reversal of an opinion from this court." *Carter*, 554 N.W.2d at 114. There has been no relevant intervening supreme court case here. Thus, *Nordeen* is inapplicable.